1   UNITED STATES BANKRUPTCY COURT

2   EASTERN DISTRICT OF NEW YORK

3   Case No. 23-43027-nhl

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   COTTONWOOD VENDING,

8

9            Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                  United States Bankruptcy Court

12                  271-C Cadman Plaza East

13                  Brooklyn, NY 11201

14

15                  November 16, 2023

16                  10:29 AM

17

18

19

20

21  B E F O R E :

22  HON NANCY HERSHEY LORD

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  UNKNOWN

1    HEARING re [25] Application to Employ Application to Employ

2    A.Y. Strauss as Counsel to the Debtor and Debtor in

3    Possession Filed by Eric H Horn on behalf of Cottonwood

4    Vending LLC.

5

6    HEARING re [14] Initial Case Management Conference

7

8    HEARING re [31] Jason Penners Joinder to Motion to Dismiss

9    by Adam Sherman (ECF Doc. No. 30). Filed by Sheryl P

10   Giugliano on behalf of Jason Penner (RE: related

11   document(s)[30] Motion to Dismiss Case filed by Creditor

12   Adam Sherman).

13

14   HEARING re [30] Motion to Dismiss Case Filed by Jennifer Amy

15   Rossan on behalf of Adam Sherman.

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Rita Weltsch

```
 1   A P P E A R A N C E S :

 2

 3   SADIS & GOLDBERG LLP

 4        Attorneys for Adam Sherman

 5        551 Fifth Avenue, Suite 21st Floor

 6        New York, NY 10176

 7

 8   BY:  JENNIFER ANN ROSSAN

 9

10   A.Y. STRAUSS LLC

11        Attorneys for the Debtor

12        290 West Mount Pleasant Avenue, Suite 3260

13        Livingston, NJ 07039

14

15   BY:  MARIA A.G. HARPER

16        JAMES P. MANSFIELD

17        ERIC H. HORN

18

19   RUSKIN MOSCOU FALTISCHEK, P.C.

20        Attorneys for Jason Penner

21        1425 RXR Plaza, Suite 15th Floor

22        Uniondale, NY 11556-1425

23

24   BY:  SHERYL P. GIUGLIANO

25
```

1   UNITED STATES DEPARTMENT OF JUSTICE

2        Attorneys for the U.S. Trustee

3        201 Varick Street

4        New York, NY 10014

5

6   BY:  NAZAR KHODOROVSKY

7

8   HOGUET NEWMAN REGAL & KENNEY, LLP

9        Attorneys for Jason Penner

10       60 East 42nd Street, 48th Floor

11       New York, NY 10165

12

13  BY:  BRADLEY J. NASH

14       WENDY TSANG

15

16  ALSO PRESENT:

17  ANIELLO ZAMPELLA

18  JASON PENNER

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            THE COURT:  I'm all for other attorneys

3    presenting, so that's fine.  Who else is appearing today?

4            MS. ROSSAN:  Good morning, Your Honor.  This is

5    Jennifer Rossan for creditor, Adam Sherman.

6            THE COURT:  Okay, just go fully.  I want to get

7    everyone down here for my notes for Adam Sherman.  Okay, go

8    ahead.

9            MS. GIUGLIANO:  Good morning, Your Honor.  Sheryl

10   Giugliano, Ruskin Moscou Faltischek, counsel to creditor,

11   Jason Penner.  Also here with me is Mr. Penner attending by

12   Zoom and our co-counsel, Brad Nash at Hoguet Newman Regal &

13   Kenney, again on listen, but state court litigation counsel.

14   Thank you.

15           THE COURT:  Thank you.

16           MR. BANZHAF:  Good morning, Your Honor.  Alex

17   Banzhaf from Tuttle Yick for creditor, Robert Taylor.

18           THE COURT:   Okay.  So I heard your sound, but

19   your lips weren't moving.  Now, I think they're moving.  Let

20   me see, say something again.  Okay, now you're moving, okay.

21           MR. BANZHAF:  Sorry for any (sound glitch).

22           THE COURT:  Give me the name of your client.

23           MR. BANZHAF:  Robert Taylor, Entry 37.

24           THE COURT:  Robert Taylor?

25           MR. BANZHAF:  Correct.

1          THE COURT:  All right.  We don't have the best

2    connection.  What I'm going to do is I'm going to ask people

3    (sound glitch).  Okay.  I'm going to ask people who aren't

4    speaking to mute, so we don't have a problem.

5          Who else is appearing today that I haven't gotten?

6          MR. KHODOROVSKY:  Good morning, Your Honor.  May

7    it please the Court, Nazar Khodorovsky, trial attorney for

8    the U.S. Trustee, appearing in opposition to the retention

9    of the A.Y. Strauss firm.

10          THE COURT:  Okay.  All right, so I did a lot of

11    reading because I didn't have the case before today before

12    me -- this is the first time.  I have an initial case

13    management conference.  Let's do that first briefly.

14          The case was filed August 24th, so it's quite a

15    while ago now.  The matrix and the schedules were not filed;

16    they were filed on September 8th.  Everything is complete on

17    the petition and schedules, except the NICS code.

18          With respect to retention, the retention motion by

19    a motion returnable today and it is objected to.  With

20    respect to the bar date order, it is issued on November 5th,

21    setting a bar date for governmental -- putting a bar date of

22    January 8th, 2024 for general creditors and a governmental

23    bar date of February 20th, 2024.  Debtor needed to serve it

24    by November 14th and has to file an affidavit of service and

25    having done so.  The 341 meeting was scheduled for September

1    29th.  I'll get to that in a minute.

2         The Debtor, with respect to his insurance in a VIP

3    account, I don't know the answer to the VIP account or if

4    the U.S. Trustee, but Debtor filed a letter on 10/10,

5    stating it has no assets that aren't insurable; we'll get

6    back to that.  We have a monthly operating report for the

7    sub-period of August into September filed.

8         We have a lot -- we have 10 motions today to

9    dismiss by a creditor that's been joined by other creditors,

10   and we've got, again, this contested.  The nature of the

11   business, I got a little frightened when I saw Bitcoin

12   because I figured, oh, I'm going to have to learn this

13   stuff.  But ATMs, unfortunately, I know very well, Bitcoins,

14   a little less.  Okay.  But it's more about ATM Bitcoin

15   kiosks than it is about Bitcoin.

16         MR. HORN:  Yes, Your Honor.

17         THE COURT:  Okay.  So as I understand it, there

18   were these kiosks that this Debtor owned or licensed or set

19   up or however, but I think owned but you'll probably

20   (indiscernible), and that if a person wanted to get money,

21   it could -- again, it could transfer Bitcoin, I guess, to

22   its account and get dollars.  And the other was true too,

23   the person could use dollars to get Bitcoin.  The customer

24   would deposit cash and receive an equivalent amount of

25   Bitcoin and that would be deposited either in the customer's

1    existing Bitcoin wallet or a newly created paper wallet with

2    private keys to access the customer's Bitcoin on the Bitcoin

3    network.

4        To earn gross revenues -- I was a little confused

5    by this sentence, but to earn gross revenues, the Debtor

6    relied on the differences in Bitcoin exchange rates on its

7    transactions to its customers and online cryptocurrency

8    exchanges.  Okay.

9        So the Debtor's operations were started by the

10    Debtor's sole member -- this is an LLC -- Aniello Zampella,

11    and there's some loan obligations there, again, part of the

12    subject of the discussions with respect to the objection.

13    Again, the reason for the filing, again, some dispute all

14    around, but there was -- it's not disputed that there was a

15    hack, a security breach hack in 2021, and part of the

16    Debtor's cloud service provider, Digital Ocean.  And so,

17    therefore, there was a breach of security with respect to

18    the Debtor's customers.

19        The Debtor shut down the ATMs.  Again, there seems

20    to be differences of opinion or maybe some inconsistencies

21    of different times with why that happened.  After the

22    breach, again, there was some issues with respect to

23    withdrawing money, which again, has been disclosed by the

24    Debtor.

25        And then there's all this litigation.  So there's

1    four pending litigations at least that I know about or at

2    least that the Debtor disclosed.  We've got Secure Card

3    Management, LLC against Cottonwood Vending, LLC and others;

4    Adam Sherman v. Aniello Zampella, et al, again, against

5    others; Rober Taylor v. Aniello Zampella and others; and

6    Jason Penner against Aniello Zampella and others.

7              And one of them or more of them -- one of them was

8    removed, correct?

9              MR. HORN:  Your Honor, this is Eric Horn, if I

10   could answer.  I'm also happy to give Your Honor a full

11   backstory, a full backdrop of the case.

12             THE COURT:  I read it.

13             MR. HORN:  Okay, got you.

14             THE COURT:  Just answer my question.  Was it one

15   action removed?

16             MR. HORN:  There are two that were removed and

17   there are two that are in the process of being removed, Your

18   Honor.

19             THE COURT:  Okay.  But so far, only one of them

20   was referred down?

21             MR. HORN:  One of them, right.  So one of them was

22   to the Eastern District and referred down to Your Honor's

23   court.  One is somewhat stuck in limbo in the Southern

24   District, which we're trying to get removed to the Eastern

25   District.  You know, they're not requiring a change of venue

1   motion.  It's just that we're trying to straighten it out

2   with the clerk.

3               THE COURT:  I was going to ask you (indiscernible)

4   a change of venue motion, okay.

5               MR. HORN:  And we haven't done that for either one

6   and the clerk automatically transferred it.

7               THE COURT:  Okay, so that's two.  And there are

8   two that you haven't transferred.

9               MR. HORN:  That's right, there are two more.  And

10  again, we're still within our timeframe within the 90 days

11  of the petition date to remove those, and those will be

12  removed in very short order.

13              THE COURT:  Okay, all right.  And what is your

14  thinking behind removing them to my court?

15              MR. HORN:  Well, the thinking is, Your Honor,

16  again, there's a lot of litigation and it's all over the

17  place, okay?  We want to have the litigation addressed in

18  one forum.  Again, we don't want anyone racing to the

19  courts.

20              THE COURT:  But why my forum?

21              MR. HORN:  Because it's all bankruptcy related,

22  Your Honor.  First of all, the claims belong to the estate.

23  They were filed on behalf of the Debtor, filed on behalf of

24  Cottonwood if you look at the captions.  They're also filed

25  individually, but they're also filed on behalf of

1   Cottonwood.  So they're derivative in nature and those

2   derivative claims belong to the estate; they are, in fact,

3   core claims.  That's why --

4            THE COURT:  Okay, that's your theory.  It seemed

5   to me that -- a couple of things.  We're just on this issue

6   without getting into the bigger issues.

7            It seemed to me that, first of all, that if you

8   hadn't removed the entire case or you don't seek to remove

9   the entire case, there is no stay against the individual,

10  okay.  They would have been -- if they needed to be severed

11  in state court, they would have been severed and everyone

12  could have proceeded against the individual and any other

13  non-debtor, so I wanted to make that observation.

14           And obviously, any time they're being removed,

15  everyone -- you know, just so we're clear, any one party

16  who's involved in the litigation has the right to seek

17  remand or to ask them to abstain, so that hasn't -- that

18  could be ahead of us, so I only wanted to make that

19  observation.

20           And the reason I asked you this question is that

21  at least the creditors think, from what I gather, that the

22  Debtor was named because the Debtor was a necessary party,

23  basically the Debtor doesn't have anything or may not have

24  much.  Maybe it has some stuff, we don't know; that's

25  another issue.  And so, either named as a necessary party or

Page 12

1    even if somebody, again, was suing the Debtor.  But that was

2    not -- that was kind of tangential, either because there's

3    not much to recover or with tangential to the party who they

4    think is liable to them, so that's why I asked the question.

5              MR. HORN:  And, Your Honor, if I could just

6    clarify one thing, and I apologize.  Again, we do disagree

7    with the whole tangential, I guess, notation.  And the

8    reason for that, Your Honor, is because it's derivative,

9    whether the Debtor has claims or has assets or not, and

10   again, we do believe that they have valuable assets.  But

11   because they're asserted on behalf of the estate, that means

12   that anything that they claim -- let's say they are

13   successful in their litigation, anything that they recover

14   would have to be given back to the estate because they are

15   derivative in nature, okay, so they belong to the estate.

16              So that's why I just want to make clear that

17   regardless of what the asset classes are or the salability

18   of them or the values of them, that's immaterial because

19   anything that's recovered, again, gets technically -- and

20   that's one of the reasons we're in bankruptcy Court is to

21   avoid, you know, it going to one party above the next,

22   depending on who gets a judgment first, if that's where it

23   goes.  We're just trying to make sure that everyone shares

24   pari passu in appropriate classification.

25              I can get into certain things about

1    classifications in a moment because we made progress, you

2    know, and Mr. Langberg exercising his fiduciary duty, we've

3    made progress on having certain things be classified by

4    insiders.  We want to advise the Court of that.

5            And we also want to advise the Court that we are

6    in the process of wrapping up a $250,000 DIP from a third

7    party, which will fund this Chapter 11, and I think --

8            THE COURT:  Let's not get ahead of ourselves.

9            MR. HORN:  Understood, Your Honor.  I just wanted

10   to kind of paint a picture here.

11           THE COURT:  Okay.  Mr. Khodorovsky, on status, do

12   we have proof of a DIP account?  I know we have an insurance

13   issue.

14           MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky

15   for the U.S. Trustee.  Actually, the U.S. Trustee does agree

16   with the Debtor that the Debtor does not have insurable

17   assets at this time, so we have not been requiring

18   insurance.

19           However, Your Honor, to date, we have not received

20   proof of a debtor-in-possession account in this case.

21           MR. HORN:  We have a DIP account.

22           MR. KHODOROVSKY:  Your Honor, may I?  Your Honor,

23   this is Nazar Khodorovsky for the U.S. Trustee.  I have not

24   received such proof, Your Honor, I haven't seen it.  I'm

25   going to review my office's file right now to see if we have

1    it.  Your Honor, there was not --

2              MR. HORN:  If it wasn't sent, it was a mistake of

3    our firm.

4              THE COURT:  Mr. Horn --

5              MR. KHODOROVSKY:  Your Honor, as of the 15th of

6    November, which is the last time I updated our record, we

7    did not have proof of a debtor-in-possession account as of

8    the 15th of November.  Also, Your Honor, the operating

9    reports were filed, including the September report, don't

10   have any bank statements attached.

11             Thank you, Your Honor.

12             THE COURT:  Okay.  Just to be clear, two things

13   can be true at the same time.  You could have a DIP account

14   and he doesn't have proof of it.

15             MR. HORN:  That's what I'm saying, Your Honor.

16             THE COURT:  Those are not two -- okay, but you

17   know what?  Unless he has proof of it, he hasn't.

18             MR. HORN:  Understood.  We will send it out

19   immediately after the hearing, Your Honor.

20             THE COURT:  Okay.

21             MR. KHODOROVSKY:  Thank you, Your Honor.

22             THE COURT:  So it seems to me before we deal with

23   the contested motion on retention, it makes the most sense

24   for me to go to the motion to dismiss.  And again, I've read

25   the papers, (indiscernible) read every exhibit.  I've read

1    the case.

2           So the initial motion or the fee motion was made

3    by Adam Sherman, and it was joined by creditors, Jason

4    Penner and Gregory Tuttle.  So who's taking the lead today

5    on the motion to dismiss?

6           MS. ROSSAN:  This is Jennifer Rossan for creditor,

7    Adam Sherman.  It was -- we made the initial motion to

8    dismiss that some of the other creditors joined, so I'll

9    speak briefly for us.  I know Your Honor has reviewed the

10   papers.

11          But we think that this Chapter 11 should be

12   dismissed because, first of all, in terms of timing, it was

13   filed the night before creditor, Adam Sherman, was supposed

14   to file his notice issue in the state court litigation.  I

15   know it's not dispositive, but --

16          THE COURT:  Let's start with a stronger argument.

17   Go ahead.

18          MS. ROSSAN:  Okay.

19          THE COURT:  Everything in my court is filed on the

20   night before something, actually the night before a note of

21   issue is not as significant as a lot of other kinds of time

22   things that stop everything, so go on.

23          MS. ROSSAN:  Okay, I'll move on.  The Debtor has

24   not operated since 2021 when its principal, Mr. Zampella,

25   shut it down.  He likes to tell a story now that it was

1    because of a hack in one of his service providers, but

2    that's not the true story.  Under oath in the state court

3    action, he testified, as I'm sure you saw in our papers,

4    that he closed down the Debtor in October 2021 because he

5    didn't feel like operating it anymore.  He didn't want to be

6    bothered, it was a pain, and he just didn't want to deal

7    with that business.

8            THE COURT:  He also said other businesslike

9    things, like the fact that, you know, there were certain

10   things that he thought he would be able to get up and

11   running, he didn't feel he had the support, difficulties

12   with dealing with these employees.  I mean, it was more than

13   just I don't feel like doing it anymore, although I think

14   there were those sentiments too.

15           MS. ROSSAN:  I mean, I think he led when I was

16   asking him in his deposition, he certainly -- his lead off

17   response to my question about why he just closed the company

18   with no regard to the employees or anyone else, customer,

19   was he just didn't feel like doing anymore.  He didn't want

20   to be bothered, it was annoying, it was a pain in the neck.

21           And so, that's what he did; he just abandoned the

22   entire company.  He had these Bitcoin ATMs and they were

23   placed in bodega-type places, pursuant to leases, and he

24   just left them there in October 2021.  I believe he

25   testified in the 341 meeting that he paid for those leases

1   through December 2021, but after that, which was now two

2   years ago, he just left them where they were and he -- who

3   knows if they're even still there; he certainly doesn't

4   know.

5           I mean, it's kind of -- his papers are hard to

6   decipher because initially when you first read his initial

7   filings, you get the feeling that he's trying to get these

8   ATMs back and, you know, they are property that are of some

9   value to the company.  But in truth, he has no idea where

10  they are, he hasn't seen them in two years, he doesn't even

11  know if they're still intact, and they can't be considered

12  any kind of asset for the estate.

13          And, in fact, to that end, the Debtor filed a

14  final tax return in 2021, which he now claims was a mistake,

15  but he did file.  He had accountants who filed the final tax

16  returns and wrote off all of those ATMs, okay?

17          THE COURT:  So is it your understanding that he

18  owns this ATM machine, he actually owns it outright, but in

19  order to put it in -- and I could ask the Debtor after -- in

20  order to put it in a bodega or a store or whatever it may be

21  or a casino -- I don't know if they're in casinos -- in

22  order to put it in such a place, he has a license or a lease

23  agreement with the brick-and-mortar entity it's sitting in?

24          MS. ROSSAN:  Yes, that is exactly my

25  understanding.  At one point, the Debtor did own these

1    actual ATMs, and in order to place them where they were

2    placed around the city, he had to pay, like, a lease, a fee

3    to have them positioned in the bodegas; that is my

4    understanding.

5            THE COURT:  Presumably, if he just walked away and

6    left them there and stopped paying for them, maybe they

7    would have had the right to go take them out and do

8    something with them, so we don't know, okay.

9            MS. ROSSAN:  We don't even know.  Maybe they did

10   take them out, maybe they gave them to somebody, maybe they

11   put them out with the trash -- we have no idea -- or maybe

12   they're still sitting there, but you would think the Debtor

13   would know, but I don't think the Debtor knows or the Debtor

14   hasn't indicated that he knows.

15           Then, you know, in support of this Chapter 11, he

16   also said he's got this other asset potentially, which is a

17   Bitcoin license, a BitLicense, which was the license

18   required by the New York State Department of Financial

19   Services, to run the kind of business that he was running.

20   And that, he admits, is delinquent, it's lapsed.  He, I

21   don't think has done, despite the fact that we are

22   obviously, you know, fiercely contesting this Chapter 11, I

23   don't know -- the last I heard, there hasn't been anything

24   done to revive its status or to restore its status, and I

25   don't think they know how long that would take, whether it

1    could even be done, which brings me to the next point, which

2    is --

3                THE COURT:  Well, let me ask you another question

4    since I used to do some work in the State of New York now

5    and then for about 12 years.

6                MS. ROSSAN:  So did I.  I did too.

7                THE COURT:  Oh, okay.

8                MS. ROSSAN:  I worked in the Litigation Bureau.

9                THE COURT:  You did, in New York City?

10               MS. ROSSAN:  Yes, in New York State.  I worked in

11   litigation firm in the State A.G.'s office from '96 to '99

12   when I went to court counsel.

13               THE COURT:  Oh, okay, we overlap.  So the question

14   I would have is assuming it was revivable, is it

15   transferrable?  Lots of things are not transferrable like

16   this in the State of New York.  We would, as the bankruptcy

17   person for the state, I would run in with my objection about

18   things that in the view of the State were not assignable or

19   transferrable that debtors often thought otherwise, but did

20   not ever have a BitLicense as a subject when I was there

21   many years ago.

22               But I don't know -- I guess you (indiscernible).

23   I don't know if they're transferrable or assignable; it's

24   certainly a question.

25               MS. ROSSAN:  Well, that was also part of -- in our

1    motion, that was another argument that we made.  We don't

2    know either.  We've never been told.  We've asked this

3    question constantly and we've never been told that it is.

4    Maybe Mr. Horn will address it when I'm done making my

5    entire argument; maybe he knows now.

6              But up until today, we've never been told that, in

7    fact, it is transferrable.  We've never seen any regulation

8    from DFS saying that it is transferrable.  Certainly, we

9    won't deny that there was quite a process for the Debtor to

10   get the -- in other words, it was very -- they were very

11   highly vetted and they had to go through, you know, a lot of

12   procedures in order to get the actual BitLicense; there

13   weren't that many granted.

14             And I don't really think -- I'd be surprised, but

15   Mr. Horn will tell us, I suppose, that you can just -- you

16   know, that the BitLicense which arguably was issued to the

17   Debtor can just be transferred to someone else without that

18   person having passed all of the tests and everything that

19   the Debtor had to initially pass in order to -- I mean, to

20   get the BitLicense.  I know this from the state litigation.

21   They were represented by counsel, Latham & Watkins.  It was

22   a highly negotiated, you know, process; it was very in-depth

23   and it was very time consuming.  So I'll just leave that at

24   that, but there's been no evidence.  There's been no showing

25   that it can be transferred, sold, marketed in any way.

1           And then finally, that brings us to the last so-

2    called purported assets that the Debtor claims to have,

3    which is a lawsuit -- or a potential lawsuit, I should say

4    -- against the service provider, Digital Ocean, which it

5    claims was hacked and, therefore, impacted the -- or it had

6    some kind of impact on the Debtor's decision to just close

7    its business; that's the argument it's making now.

8           But first of all, it's not -- we've never seen any

9    evidence that Digital Ocean was hacked or that as a result

10   of the hack, the Debtor lost any of its Bitcoin.  I mean,

11   this is what the Debtor says, but they've never provided any

12   evidence that it actually happened.

13          And regardless, that hack allegedly happened in

14   October 2021.  Here we are, more than two years later, and

15   without a lawsuit filed against Digital Ocean.  I mean, I

16   understand if it's a contract case, you know, in New York

17   law, it's maybe a six-year statute of limitations, but in

18   light of everything that's going on, why is the Debtor

19   waiting?  I mean, I don't know why the Debtor is waiting.  I

20   don't know why the Debtor hasn't filed a case, and it's

21   entirely speculative that even if they file a case that the

22   Debtor will win.

23          And one more thing on that.  The Debtor's

24   principal testified in his deposition in the state court

25   action that none of Cottonwood, none of the Debtor's

1    security procedures were effective.  He just says, well, you

2    know, they got hacked and I just closed down the company,

3    you know, I just didn't want to be bothered and that hack

4    was just the last straw.  But he did testify affirmatively

5    that the Debtor was not compromised in any way; that none of

6    the Debtor's customers' information was hacked or lost or

7    none of the customers' Bitcoin was lost.

8              So I think this purported hack is just a

9    convenient excuse, and now a highly speculative lawsuit,

10   which hasn't been filed in two years, is just a last gasp by

11   the Debtor to try to conjure up some assets to justify this

12   Chapter 11.

13             And just with respect to some other aspects of

14   this whole thing.  Although every once in a while, the

15   Debtor will file something that says it has an employee --

16   that would be Mr. Langberg, who was hired specifically for

17   this Chapter 11.  In most of its filing, it admits that it

18   did not have any employees.  And there's conflicting

19   information about, you know, whether or not the ATMs are

20   assets or not assets.

21             It's just no reasonable likelihood that this

22   Debtor ever intended to reorganize and there's no reasonable

23   probability that it will emerge from bankruptcy.  And this

24   case was filed in bad faith because creditor, Adam Sherman,

25   was about to file his note of issue in the state court

1    action and either move for summary judgment or go right to

2    trial before a state court judge who was not buying anything

3    this Debtor or its principal was selling.

4            And with respect -- I annexed some of the state

5    court -- just to give the Court context, I know it's not

6    dispositive -- I annexed some of the state court decisions.

7    And the state court judge felt very strongly that despite

8    the Debtor's principal testifying that, oh, I loaned all the

9    Bitcoin to Cottonwood so I could take it out whenever I

10   wanted because it was repayment of the loan I initially made

11   to it, the state court judge rejected that.  He looked at

12   that 2017 promissory note, he thought it was a joke, and he

13   basically said you cannot prove you ever made a loan of any

14   Bitcoin to the Debtor, Cottonwood.  And anything you,

15   principal Zampella, take out, is considered property of

16   Cottonwood.

17           So all of this kind of backstory about the

18   principal Zampella making some kind of loan to get the

19   Debtor started and now being able to be paid back, it's just

20   -- it was rejected outright by the state court because

21   there's no evidence that ever happened.  So that's the basic

22   -- that was the basic overview of Mr. Sherman's motion.

23           As the Court knows, our motion -- Sherman's motion

24   -- was joined by another creditor, Jason Penner, and I'll

25   turn it over now to Miss Giugliano, as long as it's okay

1    with the Court, because Miss Giugliano raised some other

2    issues that are important to all of the motions to dismiss.

3            THE COURT:  Okay.  Go ahead, Miss Giugliano.

4            MS. GIUGLIANO:  Sheryl Giugliano, counsel for

5    Jason Penner.  Thank you, Your Honor.

6            I don't want to take over or hijack the Court's

7    agenda.  If there somewhere else you wanted to go, I can

8    wait or I can...

9            THE COURT:  No, no.  I wanted to go to you, go

10   ahead.

11           MS. GIUGLIANO:  Oh, I appreciate that.  Thank you.

12   I think Adam Sherman's counsel made good, valid points.

13   There's a reason we filed the joinder to the motion to

14   dismiss; the arguments are compelling.

15           I think rather than repeating any of them, the

16   perspective we would come at it is a little bit different,

17   maybe a slightly different nuance as to say there is nothing

18   to administer here.  It's not only that the Debtor has no

19   reasonable hope of a likely rehabilitation or even a valid

20   liquidation, there's nothing to do here.

21           And the only litigation claim that Mr. Horn has

22   referred to, Debtor's counsel, because they now belong to

23   the estate, exist because Debtor chose to file bankruptcy.

24   But those are all valid litigation claims that could proceed

25   in state court; you don't have to be in bankruptcy court.

1    We're here because the Debtor chose to be here for some, you

2    know, litigation tactic presumably, a delay tactic it seems

3    like.  But, you know, the derivative action, yes, they are

4    property of the estate because the Debtor filed; that estate

5    didn't exist before the Debtor filed.  So I think it's a

6    little circular to make that argument and a little bit

7    misleading to the Court.

8              The next point I would make, Your Honor, is just

9    that the Debtor's counsel is referring to this $250,000 DIP

10   loan with no motion filed, no discussion with anybody about

11   the terms or a term sheet sent around to the parties, which

12   presumably is going to be used really for two reasons: to

13   potentially cure an issue, our objection, to the U.S.

14   Trustee's objection to the Debtor's retention application;

15   and then separately, second, to repay the Debtor's principal

16   on an alleged secured loan that was perfected and

17   potentially given on the day of the filing.

18             So it's unclear, from our perspective at least,

19   why there is a need for a DIP loan in this case, other than

20   to pay attorneys' fees, pay Mr. Langberg, and to repay the

21   Debtor's principal.

22             Last, I would say even if the Debtor wanted to

23   come forward and say, no, we have three potential assets

24   here -- the BitLicense, the ATM kiosks which have been

25   abandoned, and this lawsuit -- there is only vague

1    descriptions of what would happen with any of them.  The

2    BitLicense can't necessarily be transferred.  The ATM

3    kiosks, you get sort of different stories as to where they,

4    what the purpose is, or what's going to happen with them at

5    every turn.  And on the litigation, to Mr. Sherman's

6    counsel's point, there has been no litigation filed, there's

7    been only delay, there is no value on collectability, and we

8    have no idea that it would be enough to pay anyone other

9    than -- again, to repay either Mr. Zampella, the attorneys'

10   fees, or Mr. Langberg.

11           There's no there there.  There's absolutely no

12   reason for this case to be in Chapter 11.

13           There are other points, of course, made in our

14   pleadings and we'd respectfully refer the Court to them.

15   But for the sake of time and not repeating Mr. Sherman's

16   counsel's arguments, at this point, I will leave it at that

17   unless the Court has questions, of course.

18           THE COURT:  Okay.  Who else joined who wants to...

19           MR. BANZHAF:  Your Honor, this is Alex Banzhaf for

20   Robert Taylor.  We filed a joinder.  I will be brief.

21           The only point that I wanted to make was that

22   Debtor's counsel represented that the matters were removed

23   on the basis of derivative claims brought on behalf of the

24   Debtor; that is not the case.  In the claim that Mr. Taylor

25   brought, he asserted derivative claims on behalf of a

1    separate entity, but not the Debtor entity.  So in the event

2    that this matter survives the pending motion, we will be

3    seeking remand on that basis.  Thank you.

4              THE COURT:  Okay.  I've got a question for any of

5    you before I return to Mr. Horn.  In evaluating a motion

6    under 1112(b), the movant has the burden of demonstrating

7    cause by a preponderance of the evidence, and I have wide

8    discretion to determine whether cause exists.  If I

9    determine that cause is present, then I have a choice to

10   make that the code specifically gives me, and that choice is

11   to dismiss or to convert.

12             I did not see in any of your papers, but I might

13   have missed it -- certainly I didn't see it in the main's

14   motion -- any discussion of that alternative.  You all want

15   the thing to dismiss because you've got the state court

16   litigation that can go on -- it can go on anyway, assuming I

17   (indiscernible) and I don't keep the cases here.

18             But I guess I want to understand, one of the

19   things that bankruptcy does do, it stops a race to the

20   courthouse.  And to the extent that there are assets here,

21   maybe the machines but maybe not, the lawsuit against the

22   party who created a security breach allegedly.  What was the

23   third alleged asset?  I'm having a senior moment.

24             MR. HORN:  The BitLicense.

25             THE COURT:  The BitLicense, which again, is

1    something that may or may not have value or be

2    transferrable; if it's not transferrable, it doesn't have

3    value.  But, you know, then again, I don't know if it was

4    the Debtor's application or the principal or whatever;

5    again, it sounds like it was very complicated, I know I'm

6    going to hear.

7          But also potentially, and I think that this is one

8    of the keys here, and Mr. Khodorovsky will speak to it in a

9    different context probably, but folks are going after this

10   principal of the company and it appears that there may be

11   claims against the principal that the company might have and

12   presumably could be prosecuted by a Chapter 7 trustee.  And

13   a Chapter 7 trustee, again, could certainly be fine with all

14   of the litigation proceeding in state court and just

15   basically, you know, monitor it or, you know, whatever.

16   They don't have to spend a lot of money because, as I said,

17   the Debtor would be the nominal party in the Chapter 7,

18   there's nothing much to do.

19          So I guess I want to understand why it isn't a

20   better alternative, assuming I decide that you have shown

21   cause, to convert this case rather than to dismiss it so

22   that, again, we don't have sort of a race to the courthouse

23   to go after the principal when, in fact, the entity may have

24   claims against the principal and we have a process here for

25   anyone and everyone filing claims and, you know, getting a

1    distribution of assets.

2            So, I mean, again, this is a case that

3    (indiscernible) may be a case that hasn't operated in a very

4    long time, the company hasn't operated.  And, often, Chapter

5    7 is a neat way to deal with the burial and to examine into

6    what may or may not have occurred within the last number of

7    years.

8            So before I turn to Mr. Horn, I would like any of

9    you, if you would -- Mr. Khodorovsky has his hand up, I may

10   go to him next -- Mr. Khodorovsky and then the others as to

11   whether or not assuming -- I'm not finding that you've met

12   the burden of cause when I get to the next decision as to

13   whether to dismiss or convert why.  And again, sometimes a

14   Chapter 7 trustee gets brought in to take a look.

15           I mean, obviously, this might have been a case for

16   an 1104 trustee, but it's not.  In other words, one could

17   have argued that the Debtor's failure to bring the action,

18   the Debtor's failure to collect the machines, that there may

19   have been mismanagement.  But again, this case doesn't have

20   the money for an 1104 trustee.

21           In a Chapter 7 context, the trustee may look

22   around and decide that whatever assets are here, it decides

23   to abandon, but it's taken a look and then presumably, you

24   know, it can go back to being a potential free for all.

25           Mr. Khodorovsky?

1          MR. KHODOROVSKY:  Thank you, Your Honor.  Again,

2     Nazar Khodorovsky for the U.S. Trustee.  Your Honor, I'll be

3     very brief.

4          The UST no objection to the motion to dismiss

5     these cases.  However, Your Honor, as Your Honor correctly

6     said, the U.S. Trustee would prefer conversion to dismissal

7     of these cases if cause exists.  From when my office

8     investigated this matter, investigated in the eye of

9     preparing the objection to Mr. Horn's retention, as Your

10    Honor has stated, we know that there may be claims both

11    against Mr. Zampella and also claims against one of his

12    entities, an entity -- and I'm going to try to pronounce

13    this name as best as I can, and Mr. Horn or (indiscernible)

14    correct me -- Coindado LLC, which appears as receiving

15    payment from the Debtor in 2021.

16          So, Your Honor, the U.S. Trustee does think that

17    Mr. Zampella is conflicted and Mr. Langberg may also be

18    conflicted potentially.  So from the U.S. Trustee's

19    perspective, if Your Honor does believe that cause exists

20    under Section 1112, the U.S. Trustee will prefer conversion

21    to dismissal.  There are many claims that have been brought

22    (indiscernible) on behalf of the estate and there might also

23    be claims that exist against both Coindado and against Mr.

24    Zampella that a neutral fiduciary would want to investigate.

25          Thank you, Your Honor.

1          THE COURT:  And again, it seems to me as far as

2     cost goes if this were to stay in an 11, where we come out

3     with Mr. Horn's retention.  Is he conflicted; does he not

4     get to represent either?  But even if I were to overrule

5     your objection and he were to represent the Debtor, he

6     certainly can't represent -- the attorney would need special

7     counsel determinations as to whether he's going to proceed

8     against the principal.

9          And again, what Mr. Horn's going to have to

10    convince me of is that this is not a total charade because

11    it looks like a charade.  But again, it looks like a charade

12    doesn't mean it is a charade, looks like a charade, and

13    again, lots of things just don't ring true or legitimate or

14    it makes sense.  In other words, if these things were so

15    valuable, you know, where have you been.

16          I mean, again, a principal has a fiduciary duty

17    or, again, a principal -- I think that's right -- you know,

18    a director or a stockholder, you know, when you're insolvent

19    for the benefit of creditors.  And it doesn't seem that the

20    party who was running this entity did any of that to try to

21    get its assets together for the benefit of its creditors.

22          So you've got potentially breach of fiduciary duty

23    claims here; there's all kinds of claims here.  And I'm just

24    wondering, rather than all of you racing to different

25    courthouses in some ways competing with a representative of

1    the estate with respect to, again, potential assets by the

2    principal or the principal's other company, why a conversion

3    doesn't make more sense than a dismissal, assuming I find

4    that you have cause.

5              So we go to the movant first, and then I will go

6    to Mr. Horn for his entire presentation.

7              MS. ROSSAN:  Just on that discrete issue that you

8    just raised, dismissal over conversion, we did address it at

9    the end of our brief on Pages 15 and 16.

10             THE COURT:  You said there are no assets to

11   liquidate.

12             MS. ROSSAN:  Right.  And just to -- right, we did.

13   There are no assets to liquidate and all of the creditors

14   were litigating on their own behalf in state court and

15   making progress.  And we, Sherman, not only sued the Debtor,

16   we sued Mr. Zampella individually, and we sued his related

17   entity, Coindado, that Mr. Khodorovsky referred to because

18   Mr. Zampella took all this money out of Cottonwood, the

19   Debtor, and just funneled it to Coindado, which is an LLC

20   based in Puerto Rico that he 100 percent owns.

21             THE COURT:  But you make the point; that's why you

22   make the point.  The point is that a 7 or a bankruptcy where

23   you've got everybody in the different litigations racing

24   after the same thing to see who gets there first, it's made

25   for this.  It's not necessarily made for this to stay with

1    the Debtor or debtor-in-possession, but it kind of is made

2    for this for purposes of a 7 trustee so we get around this

3    race to the courthouse and all of these competing claims.

4            So I understand why each of you individually

5    wouldn't necessarily want to be part of that party, but I

6    have to look at it in a more global way.

7            MS. ROSSAN:  Well, I didn't mean to make that

8    point, and I'm sorry if I did.  So maybe I'll just amend

9    what I said and say that it would be unnecessarily -- it

10   would cost money to have a Chapter 7 trustee, and I think

11   the creditors would just be better off just litigating their

12   claims as they were doing.  They were -- they can represent

13   their interests in state court.  There are no assets for a

14   Chapter 7 trustee.

15           THE COURT:  Well, again, we don't know that.

16   That's the Chapter 7 trustee's job to determine.  I mean, it

17   seems to me you've all conceded a potential asset, and that

18   is if there was a transfer that was improper by the company

19   to its principal or to its principal's related corporation,

20   that's an asset that a trust -- that's an asset.  And maybe

21   this other stuff is assets and maybe it's not, but that's

22   why you get a trustee in to take a look and see, a looksee

23   to see whether it makes sense.

24           As far as it being expensive, unfortunately, it's

25   not really expensive in the sense that trustees only get

1   paid to the extent that they create an estate, bring money

2   into the estate, in which case they get (sound glitch).  And

3   to the extent that they retain counsel, that counsel for

4   better or worse only gets paid, again, if there's an estate

5   in which to pay them.

6           So, unfortunately, it really is, in the nature of

7   a contingency fee situation, although that's not what we

8   call it.  But, in fact, if they can't collect -- and also,

9   to the extent that we don't want to -- I mean, there's

10  another thing that makes sense.  To the extent that you're

11  all chasing the principal here and the principal is going to

12  have to, assuming I don't keep these cases, continue to

13  litigation and spend a lot of money, why would you want him

14  to do that so that at the end of the day, you know, he's got

15  that much less money to pay your judgment, assuming you get

16  a judgment.

17          So, I mean, there are a whole lot of reasons why

18  it would be more economical for everybody to do this.

19  Again, and nothing stops you from continuing your litigation

20  against the others, assuming the litigation doesn't, you

21  know, again, assuming it doesn't stay in my court or even if

22  it does.

23          But I want to -- Miss Giugliano, your thoughts on

24  conversion?

25          MS. GIUGLIANO:  Thank you, Your Honor.  Sheryl

1    Giugliano, counsel to Jason Penner.

2            So, of course, in the first instance, Mr. Penner

3    was looking for the case to be dismissed, but I think the

4    Court makes valid points with respect to the equity and what

5    might be accomplished through a Chapter 7 trustee.

6            The one point I would make contrary to that is

7    similar to the point that I made earlier in that the

8    potential avoidance actions that are created by the estate.

9    First of all, they continue to exist under state law, absent

10   the bankruptcy filing, and they did exist before and that

11   was probably part of the litigation that the parties are

12   pursuing.

13           And so, I would say, again, it's a little circular

14   to say, well, there is things to investigate here, but those

15   things existed before, you know, Mr. Zampella decided to

16   bring us all before Your Honor, which we're happy to be

17   here, of course, but I think under other circumstances

18   potentially.

19           Anyway, I think that at the end of the day, our

20   client would be amenable to a conversion but would, in the

21   first instance, prefer a dismissal.

22           THE COURT:  Okay.

23           MS. GIUGLIANO:  Thank you, Your Honor.

24           THE COURT:  Mr. Banzhaf.

25           MR. BANZHAF:  I would echo the comments we just

1    heard and say that we filed originally in the Supreme Court

2    because that was our chosen venue.  And like what Miss

3    Rossan said, there were numerous -- there were rulings that

4    inured to our client's benefit there and that is why we

5    would prefer a dismissal over a conversion.  But otherwise,

6    I have nothing else to offer.

7                 THE COURT:  Well, again, assuming you were --

8    again, assuming that the trustee was prepared to consent to

9    matters being remanded, let's say, is that -- you state

10   court litigation could continue.  Again, I don't know what

11   kind of discussions you would have with the trustee; I don't

12   want to get ahead of myself, but I think that's going too

13   far down the road.  I don't think it would do that -- again,

14   I think that it would -- one of the key things to do, again,

15   7 for corporation's a way to bury an end of corporation in a

16   neat way, and also in a situation like this where you may

17   have self-dealing or avoidance actions.

18                 I mean, you could have fraudulent conveyance

19   actions.  You presumably would have to, you know, amend your

20   pleadings if you don't have them.  Preference actions, they

21   only exist in my forum; they don't exist in state court

22   forums.  Fraudulent conveyance actions do, but preference

23   actions don't; they only exist in (sound drops), as part of

24   the same idea that you don't want to race to the courthouse.

25   And so, anything that's been done within 90 days could come

 1    back or a year for (indiscernible).

 2            Okay, Mr. Horn, your turn.

 3            MR. HORN:  All right.

 4            THE COURT:  You've got an uphill battle here.

 5            MR. HORN:  That's all right.

 6            THE COURT:  A lot of it is rooted in the same

 7    arguments that the U.S. Trustee is making in that this looks

 8    like a -- again, this looks, you know, that this Debtor

 9    could have, through this principal, could have a lot of

10    these things a long time ago.  All of a sudden, it wakes up

11    that it thinks it's going to be able to do this and bring

12    all the litigation in front of what you thought might have

13    been a friendly forum.

14            MR. HORN:  Judge, if I could just paint the

15    picture, tell the story, have an opportunity.

16            THE COURT:  Go ahead.

17            MR. HORN:  All we've heard today, Your Honor, was

18    testimony.  Again, I'd like to remind everybody that this is

19    not an evidentiary hearing.

20            THE COURT:  Oh no, no, no.  I didn't hear any

21    testimony.  I just heard argument.  I don't take testimony

22    by way of argument.

23            MR. HORN:  Okay.  Thank you, Your Honor.  Your

24    Honor, let me just give a little bit of a backdrop here, and

25    again, I apologize for my colleagues who prepared very

1    diligently, you know, to have the ability to present on the

2    law and on the facts, but it looks like I'm going to have to

3    address just some of what was said.

4              Again, Your Honor, this case was filed in good

5    faith.  The reason that it was filed in good faith, Your

6    Honor, there are various litigations.  It wasn't a

7    litigation tactic, Your Honor, because there's just -- all

8    these things belong in one forum, Your Honor.  Again, in

9    order for creditors, cases are for the most part derivative

10   in nature, okay.  So because they're derivative in nature,

11   they belong to the estate.  It is up to the estate to

12   prosecute them.  And we could discuss whether or not, you

13   know, Mr. Langberg is the appropriate fiduciary; we can get

14   to that another time.  But what I am saying, Your Honor,

15   this was not a litigation tactic; this was filed in good

16   faith.

17             And with regard to the value of the assets, again,

18   I could address the kiosks first because everyone seems to

19   be jumping up and down over these kiosks.  Okay, the reason

20   the kiosks were disclosed is because it's an asset of the

21   estate.  Whether it's recoverable is a different story.

22   Just like the schedules ask for a/r, okay, and there's

23   little things you fill in for a/r, whether it's 180 days,

24   whether it's 30 to 90.  This may not be recoverable, but

25   that doesn't take away from the fact that it's still an

1    asset, and what has been disclosed is the assets from the

2    kiosk.  And again, I just want to paint the picture.

3            THE COURT:  Well, paint the picture for me and

4    tell me why the Debtor --

5            MR. HORN:  Your Honor, but I want to --

6            THE COURT:  -- (indiscernible) why when he decided

7    to terminate the business did it abandon the kiosks?

8            MR. HORN:  Okay, Your Honor, but again, let me

9    just -- if I could just paint the picture and then we can go

10   back to the kiosks at the end if appropriate with Your

11   Honor.

12           The reason the kiosks were valued that way, Your

13   Honor, is simple.  The accountant for the Debtor said it's

14   cost of the kiosks minus depreciation, so that's how a value

15   was come up with.  Again, we don't know if they're

16   collectable.  You know, we placed a few calls, but we

17   haven't located any.  And, quite frankly, I don't think

18   we're going to focus on that asset because that asset --

19           THE COURT:  Do you know what it costs, by the way,

20   what does those kiosks cost?  You had to buy -- you bought

21   them new, right?

22           MR. HORN:  I can get that information, Your Honor.

23   I do not have that information.

24           THE COURT:  You don't know what they cost, okay.

25           MR. HORN:  I don't know how much they cost.

1          THE COURT:  How long did the Debtor operate?

2          MR. HORN:  It was, I believe, like, 2017 to 2021.

3          THE COURT:  Okay, go ahead.

4          MR. HORN:  Okay.  So, Your Honor, that's the issue

5     with the kiosks.  The bigger asset pools here are (a) the

6     BitLicense.  I mean, everyone could say it's not

7     transferrable, it's not this, it's not that; they don't

8     know.  Again, I have been talking to parties.  I have been

9     talking to Hilco, who is the gold standard in special asset

10    classes.  I have been talking to Maltz Auctions, who you

11    know does just regular types of things, but not necessarily

12    this type of particular asset class.  I've been talking to

13    other people.  We're trying to get in touch with Moelis, who

14    specializes in crypto type of sales.

15         THE COURT:  I'm not suggesting you haven't worked

16    very hard.

17         MR. HORN:  But I want to --

18         THE COURT:  So I'm not suggesting you haven't

19    worked very hard.  The problem is that your principal, okay,

20    is a creditor.

21         MR. HORN:  Understood, Your Honor.

22         THE COURT:  Now, add to that, not just an ordinary

23    creditor, but a creditor whose claim may be tainted, let's

24    say.  And so, therefore -- and again, it's a single member

25    LLC, right, so it's not -- and so you say, okay, but you've

1    explained his obligations and his obligation is to act on

2    behalf of a bigger good than himself, you know, the company,

3    the corporation, the Debtor, he's a fiduciary.

4           But where is the evidence of him doing any of that

5    for the last couple of years, okay?  All of a sudden, he

6    woke up one morning, the angels came -- I don't know -- and

7    he said -- or a better angel came and he said, I now have

8    to, you know, change my ways and correct what I haven't done

9    for two years?

10          I mean, again, that's my problem.  You want us to

11   put all of our trust in you as the attorney for the Debtor,

12   that's fine, but again, who do you take direction for.  I

13   don't want to put you in that ethical

14   situation/problem/quagmire when, again, if you want to tell

15   me how great your principal is.

16          MR. HORN:  Your Honor, that's not my plan.

17          THE COURT:  Again, I don't know how you do that

18   when he basically just walked away and didn't worry an inch

19   about any of these assets or commencing the lawsuits or

20   didn't do anything on behalf of entity or creditors.

21          MR. HORN:  Your Honor, if I could just, again,

22   just paint the picture here, if anything, just for the sake

23   of creating a record, so we have a whole --

24          THE COURT:  Okay.

25          MR. HORN:  Whether it requires an evidentiary

1   hearing or not, I mean, we could discuss that later if Your

2   Honor feels it's necessary.  But, Your Honor, again, whether

3   my principal, you know, walks on water or whether he's the

4   biggest crook in the world, I don't really care, okay?

5   We've all dealt with, you know, these types of principals.

6   I'm sure he's a lovely guy, you know, he seems like a nice

7   guy, but it doesn't matter.  It doesn't matter, we've all

8   seen bad debtors.

9          We've all seen debtors who are far worse in this

10  court.  But it doesn't matter, Your Honor, because again, at

11  the end of the day, we're all familiar with, you know, the

12  fox guarding the henhouse and Cybergenics and all that

13  lovely language that everyone likes to quote.

14          But here, we have a guy named Mr. Langberg, okay.

15  I've known Mr. Langberg since 2006, okay.  Mr. Langberg is a

16  chief restructuring officer.  He worked with -- when I was

17  at Lowenstein, he was basically the chief restructuring

18  officer of every single case I was involved in on a retail

19  level.  He's the --

20          THE COURT:  Okay.  So you brought him in to clean

21  this up.

22          MR. HORN:  That's exactly right, Your Honor, and

23  this is the whole point.  The whole point is Mr. Langberg is

24  a fiduciary.  We even amended the operating agreement, Your

25  Honor, to make it crystal clear that anything that has the

1    word Aniello in it or Zampella, Mr. Langberg makes the

2    decision, no ifs, ands, or buts about it.

3          THE COURT:  But, Mr. Horn, assuming -- again, I

4    don't know who's paying Mr. Langberg, but assuming -- I'm

5    not questioning him and I'm not questioning you.  I'm just

6    questioning, we now have you to pay; we have Mr. Langberg to

7    pay or whatever his name is; we have presumably a special

8    counsel to pay, at least one, okay, in order to do various

9    litigation that's going to be demanded be done.

10          So now we've got three professionals to pay, as

11    opposed to a Chapter 7 trustee who gets paid only to the

12    extent that he recovers and presumably one attorney who he

13    would be -- and again, he is that.  I mean, we don't have to

14    bend ourselves back and forth like a pretzel to create

15    somebody independent.  You've done quite the job trying to

16    do that and I'm not questioning you.  I'm just saying we can

17    have an independent, they sit on a panel, they're very good

18    at what they do, and there is nothing to operate here.

19    There's just cleanup.

20          MR. HORN:  Understood, Your Honor.

21          THE COURT:  Looking for (sound glitch) and

22    determining whether they're worth pursuing.  And if they're

23    not worth pursuing, they will be -- either a creditor, you

24    know, the other possibility is that to the extent there's an

25    asset here, a creditor may want to buy that asset from this

1    case in order to pursue to pursue it; it's possible.  I

2    mean, I've seen that; that's been done before.  You know,

3    whatever interests the trustee may have could be purchased;

4    that's a possibility.

5            And again, the other thing is we create that

6    independence that you're trying so hard to create and it's

7    going to take at least three professionals to create and

8    then still there's a cloud.

9            MR. HORN:  Your Honor, if I may just address all

10   of these questions?

11           THE COURT:  Yeah.

12           MR. HORN:  Because again, it's really important --

13   and I apologize for interrupting, it's not my intention at

14   all -- but it is important that Your Honor have the benefit

15   of the full picture here and the benefit of the full record.

16           So again, Your Honor, and I'll give you an example

17   of how the process works and how it is working.  So there is

18   a loan, which was filed on a secured basis.  There is a UCC

19   that was filed, you know, it was filed on the day of -- I

20   believe it was filed on the day of or the day before the

21   filing of the UCC.

22           THE COURT:  But doesn't that smell to high heaven?

23           MR. HORN:  Your Honor, but --

24           THE COURT:  Does that sound like a fiduciary who's

25   acting on the best --

1          MR. HORN:  Your Honor -- Nazar, you can laugh, but

2     again, let me have the opportunity to speak without you

3     making faces at me, okay?

4          So, guys, listen, here's the thing.  So what I'm

5     saying is that Mr. -- we have beat up on the principal,

6     okay, that he has agreed to recharacterize that loan as an

7     unsecured loan.  And remember, Your Honor, any party could

8     object to a proof of claim, any party, any party in interest

9     in the case.  So if we don't want to do it, Adam Sherman or

10    Robert Taylor or Jason Penner or, you know, their wives or

11    their dogs could object to it for all I care, okay?

12          This process works, okay?  It demonstrates that

13    Mr. Langberg is a fiduciary.  Who he's being paid by it

14    doesn't matter.  Again, Your Honor, we have a $250,000 gift

15    that we're about to sign off with a third party, okay?  I

16    don't see the conflict there.

17          And again, I don't want to jump around, but this

18    whole thing about reten- --

19          THE COURT:  Why do we need to borrow?  A trustee

20    doesn't have to borrow $250,000.

21          MR. HORN:  Your Honor, but again, I'd like to have

22    the opportunity just to tell the story.  And if Your Honor

23    wants to rule against us, that's fine, but I feel --

24          THE COURT:  What is the story?

25          MR. HORN:  So that's what I'm saying.  Your Honor,

1   I'm trying to paint the picture here.  I'm trying to tell

2   you what has been done, because again, Chapter 11s are filed

3   for a whole host of reasons, okay.  You know, you've seen

4   Chapter 11s file on the morning of a sale when the people

5   are about to raise their hand in an auction.  I mean, we've

6   all seen that, okay?

7            THE COURT:  Almost every one of my cases, go

8   ahead.

9            MR. HORN:  Right, because that's Brooklyn.  I

10  mean, that's the nature of the beast in Brooklyn, and I've

11  filed plenty of those cases in front of Your Honor, so I

12  understand.

13           But again, Your Honor, that doesn't detract from

14  the fact that there are assets.  There's a $5 million claim.

15  We have a special counsel about to be engaged who's going to

16  work on a contingency basis.  And again, I can leave it to

17  my colleagues if they want to explain, you know, why it

18  wasn't filed, why Mr. Zampella got bad advice from his last

19  counsel.  Again, you know, I could advise people of

20  malpractice, but malpractice statutes have long run in this

21  case.  But again, that's not my business to deal with one

22  way or another.

23           What I am saying is that the process with Mr.

24  Langberg worked.  They've now agreed to reduce to --

25  recharacterize that claim as an unsecured claim, okay.  So

1    that right there, early in this case we're demonstrating

2    that the process works.

3            With regard to -- and I don't want to jump around,

4    but with regard to Mr. Khodorovsky's objection, that's just

5    nonsense, Your Honor.  The whole thing is nonsense because

6    he wants to file a motion to appoint the trustee or convert

7    the case, he should do that, not some backwards way to

8    attack, you know, my retention as somehow we're tainted,

9    which is nonsense, okay.

10           And, Your Honor, I don't want to go into

11   settlement conversations with me and Nazar, but it's clear

12   as day that this is nothing more than a disguised motion to

13   dismiss -- excuse me -- a motion to convert or a motion to

14   appoint a trustee.

15           THE COURT:  Well, I don't --

16           MR. HORN:  He can bring it on.  Your Honor, this

17   has been going on since day one.  I'm happy to address it.

18   I'm happy to have an evidentiary hearing.  I'm happy to

19   depose every single party up here.  I'm happy to depose the

20   U.S. Trustee.  I'm happy to do whatever I have to do to

21   fight for my client.

22           But again, Your Honor, I keep on coming back to

23   the issue here that every case has hair on it.  Chapter 11s

24   are expensive, okay.  We've all seen -- I remember in a case

25   early on in 2004, I was working on the Twinkie case when I

1    was at Lowenstein, and everyone was saying it's a par plus

2    case, 110-cent case.  After $100 million in fees, creditors

3    got 1 percent and still got sued on preferences.  It's

4    expensive; that's the nature of the beast.  That's not my

5    problem, that's Congress's problem, okay, Your Honor?

6             But again, here we are.

7             THE COURT:  I'm here to take that problem away if

8    I can --

9             MR. HORN:  But, Your Honor, that issue is not

10   before you today, Your Honor.

11            THE COURT:  No, it is, it's very much before me.

12   Every time (crosstalk) --

13            MR. HORN:  Dismissal isn't.

14            THE COURT:  I can convert, of course it is.  You

15   don't know your law then.

16            MR. HORN:  Then I apologize.  Then, Your Honor, we

17   would request an evidentiary hearing.

18            THE COURT:  I don't need an evidentiary hearing.

19   Why do I need an evidentiary hearing?

20            MR. HORN:  Because you're taking away the Debtor's

21   rights.

22            THE COURT:  I don't need an evidentiary hearing.

23   The question is whether (indiscernible) by a preponderance

24   of the evidence if demonstrated under 1112(b), a basis.

25   There's not an argument over the theft.  There's no issues

1    of theft here.  The facts are the facts.  You're conceding

2    what happened as well.  The facts are the facts.  No one's

3    arguing -- I don't think there's been any significant

4    material factual dispute here.  I don't need an evidentiary

5    hearing.

6              MR. HORN:  Well, Your Honor, again --

7              THE COURT:  I need to determine whether 1112

8    applies.  Now you had a co-counsel or somebody in your

9    office who wanted an opportunity.  I want to give her that

10   opportunity.  She's probably prepared a lot.

11             MR. HORN:  Go ahead, guys.

12             THE COURT:  Just say your name first before you

13   speak.

14             MR. MANSFIELD:  Hi, Your Honor.  James Mansfield

15   with A.Y. Strauss on behalf of the Debtor, Cottonwood

16   Vending, LLC.  (Indiscernible) my office, so Miss Harper

17   used her office (indiscernible).

18             But to start, the movants have a burden to prove

19   that there will be serious diminution of the estate and that

20   there's no reasonable likelihood of rehabilitation.  What we

21   have indicated is that we (indiscernible).  The case law is

22   clear that plans of liquidation are means of rehabilitation;

23   that is clear from the law.  The Supreme Court has held that

24   (indiscernible) plans of liquidation.

25             So the creditors and the movants arguments that we

1    haven't shown that we can reestablish an operating business

2    that will emerge from Chapter 11 is irrelevant; we have a

3    plan of liquidation.  So our assets here, as Mr. Horn has

4    testified -- has represented the BitLicense.  Now, the

5    creditors have said -- movants have said that, you know,

6    they don't know if we can transfer those or what have you,

7    but they don't know, as Mr. Horn (indiscernible) on the

8    record, (indiscernible) about transferring the

9    (indiscernible) transferring the BitLicense.

10            We have the litigation of Digital Ocean.  Now, Mr.

11   Sherman's counsel has represented that, you know, why hasn't

12   anyone filed it.  I mean, for one, we have already met the

13   -- we're in the process of obtaining counsel on contingency

14   fee basis, special counsel.

15            THE COURT:  Well, what about all these years that

16   have passed?  I mean, I guess that's the point.  And if, in

17   fact, there was malpractice and that statute of limitations

18   has expired, you would have yet a very additional,

19   significant failing by the principal, by the Debtor through

20   its principal.  Again, that would have been a valuable asset

21   if it was malpractice.  And if the statute has run on that,

22   then again, that's another example of an asset that doesn't

23   exist anymore by virtue of total inaction by the fiduciary,

24   right?

25            MR. MANSFIELD:  Well, for one, we're still within

1   the statute of limitations to prosecute the Digital Ocean

2   claim, which I think is where most of the value is, it's a

3   $5 million claim.  What Mr. Zampella did on behalf of the

4   Debtor prosecuting the malpractice claim, I can't talk to.

5            THE COURT:  But why didn't he prosecute this

6   claim?

7            MR. HORN:  Your Honor, could I just interrupt real

8   quick?  I'm sorry.  And again, I just want to make sure that

9   we're all talking about the same things and I apologize, Mr.

10  Mansfield.

11           Again, the whole point is the lawyer who they've

12  been talking to wanted millions of dollars to file a suit,

13  okay, and my understanding is at that point, it didn't make

14  much sense to do it, okay.  There are some more issues and I

15  can get into that, but again, the long and the short of it

16  is that Mr. Zampella did aggressively look to find a lawyer

17  to pursue that action, although it was too expensive and he

18  got bad advice.

19           THE COURT:  Mr. Horn, when did you first get

20  involved in this case?

21           MR. HORN:  I got involved in this case probably

22  about a month before filing.

23           THE COURT:  And where are you getting all your

24  information?

25           MR. HORN:  Where am I getting my information?

1     Good question.  I'm getting my information from: (a) the

2     principal of the Debtor, Mr. Zampella; (b) from his

3     accountants, he has two accountants working for him and the

4     company; (c) --

5               THE COURT:  I thought somebody died, somebody

6     died?

7               MR. HORN:  Your Honor, there's been replacement

8     accountants.  When someone dies, you have to get a new

9     professional.  Two accountants, and again, one of the

10    accountants has noted some of the mistakes that have to be

11    cleaned up; that addresses the final tax return; (b) from

12    their prepetition counsel, who's been heavily involved in

13    these litigations.

14               So it's not a whole -- it's not just me pulling

15    facts out of the air, Your Honor.  It's me --

16               THE COURT:  No, I didn't think you were, but I

17    think you're primarily getting them from your principal or

18    the principal of the Debtor.  And again, it's hard to -- I

19    can understand why you'd be on the defensive when you ask

20    questions, like, well, what's happened all these years, why

21    did you abandon kiosks, so why did you not commence an

22    action.  You know, anybody -- you can commence an action as

23    a pro se, anybody can commence an action.  I mean, there's a

24    lot here that doesn't make sense and the timing --

25               MR. HORN:  Your Honor, he put in --

1          THE COURT:  -- seems very suspicious.  Again, Mr.

2     Zampella's being sued from all sides in state court and you

3     or some other professional offers him a total -- you know, a

4     way out; we're here all in one place, you know.  And there

5     are assets and, well, you know, they'll file claims and

6     we'll object to claims and we'll estimate claims and all of

7     a sudden, you know, all of this litigation will be behind

8     you.  I get it.  I get why --

9          MR. HORN:  Your Honor, but again, that's not how

10    I've approached this, Your Honor.  I would never approach --

11         THE COURT:  I know.  Yeah, it sounds like your

12    principal is doing this --

13         MR. HORN:  I make no promises like that.

14         THE COURT:  -- in order to preserve assets for the

15    benefit of creditors.  Where's he been for all these years?

16         MS. ROSSAN:  Your Honor, may I just interject one

17    thing?  In Sherman's state court action, we got valuation

18    experts.  I annexed, you know, an excerpt from -- so the

19    Debtor had an expert valuing -- hired expert to, you know,

20    do a valuation of what the Debtor was worth.

21         And I can just tell you that they said -- their

22    expert said, okay, the ATMs are written off, they're of no

23    value.  The company is not a going concern as of October

24    2021.  And there was nothing in that expert report about any

25    value to a claim against Digital Ocean.  Like, those

1    experts, those valuation experts -- I'm sure Mr. Zampella

2    told them about his purport- -- they mentioned a hack

3    because they said, well, the company is not a going concern

4    because it closed down because Mr. Zampella said there was a

5    hack.

6            But in their valuation of the Debtor, they never

7    took into account or paid any attention to this so-called

8    claim against Digital Ocean, probably because it doesn't

9    exist, it's never been filed.

10            MR. HORN:  That's not true; that's simply not

11    true.

12            MS. ROSSAN:  And what is the benefit --

13            MR. HORN:  And again --

14            MS. ROSSAN:  -- (crosstalk).  Please don't

15    interrupt me, Mr. Horn.

16            MR. HORN:  Guys, guys, guys, guys, with all do

17    respect, it is my turn to speak.  It is my turn.

18            MS. ROSSAN:  I raised my hand and you were

19    (indiscernible).

20            MR. HORN:  It doesn't matter.  Listen, I gave you

21    the courtesy and didn't object to your whole rampage of

22    thought, so give me the courtesy.  Don't object to -- don't

23    interrupt me, okay, it's just a professional courtesy.

24            So here we are again, we're back here again, Your

25    Honor.  We're about to -- we've been trying to negotiate

1   with Digital Ocean, we tried to have settlement

2   negotiations, and we're about to file a complaint, we're

3   about to get a special counsel employed who was employed

4   prepetition.  We have all these things, Your Honor, that

5   we've been moving for the benefit of the estate and we've

6   been moving diligently, Your Honor.

7           It's not like we've been sitting down on the

8   sidelines saying, oh, Mr. Zampella, you got a jail out of

9   free card because he doesn't; he doesn't have a get out of

10  jail free card and he knows that.  He knows that bankruptcy

11  court is just a way to basically liquidate all of these

12  options, all of these actions and for the benefit of all.

13  We understand that, okay, he's been well advised of that.  I

14  make no promises to anybody, okay?

15          But again, Your Honor, I know you said it's an

16  uphill battle, but I do have to reiterate, Your Honor, we

17  have taken the utmost care to claim any conflicts, okay.

18  We've worked forwards, backwards, sideways to make sure that

19  the right person was put in, the person with impeccable

20  character who just can't be bought; it's as simple as that.

21  Mr. Langberg has been independent counsel for me,

22  independent director in the MyCell case in front of Judge

23  Garrity, he's been involved for the Big M, he's been

24  involved in tons of bankruptcy.

25          THE COURT:  I get it.  Nobody was impugning

1    anybody's character.  I get it.

2              Mr. Khodorovsky --

3              MS. HARPER:  Your Honor, if I may?

4              THE COURT:  I'm sorry, who wanted to --

5              MS. HARPER:  Maria Harper.

6              THE COURT:  Yes, go ahead.

7              MS. HARPER:  Your Honor, Maria Harper, proposed

8    counsel for Debtor and debtor-in-possession.

9              Here, Your Honor, we're like to just insist that

10   we are in the infancy of this case.  And as case law sets

11   forth, the main inquiry is whether there was no opportunity

12   -- no realistic prospect of rehabilitation once the case was

13   filed, and that's simply not the case.  We're, you know,

14   being very diligent and speaking, you know -- looking for

15   all of the options to liquidate any potential

16   actions/assets.

17             The Digital Ocean lawsuit alone, it's our

18   understanding is valued at $5.7 million.  We are in the

19   process of engaging Kaiser Saurborn & Mair, and we would

20   like the opportunity to file a retention application so that

21   they could pursue these claims on a contingency basis.

22             The Debtor should be at least given the

23   opportunity --

24             THE COURT:  Is there any reason why they wouldn't

25   work for the trustee on a contingency basis?

1            MS. HARPER:  I can't speak to that, Your Honor.

2    And with respect to the BitLicense, it's our understanding

3    that approximately 25 licenses have been issued and that

4    doesn't speak just to the difficulty of getting them, but

5    more so to the fact that they are a valuable commodity in

6    order to --

7            THE COURT:  Do you know whether they're

8    transferrable or not under the statute?

9            MS. HARPER:  We are working to determine whether

10   we can transfer it.  But if it is, the fact that --

11           MR. HORN:  Guys, hold on a second.  Guys, hold on.

12   We've been advised -- we understand that they are

13   transferrable.  The only thing is the end user -- we'd have

14   to sell the company, okay, with the license; similar to an

15   alcohol license, you have to sell the whole company and the

16   end user would have to be approved.  So they could hold the

17   license --

18           THE COURT:  That's another way of saying they're

19   not transferrable.

20           MR. HORN:  But, Your Honor, it's an asset that

21   could be transferred.  It's just a matter of --

22           THE COURT:  Yes, and (indiscernible).

23           MR. HORN:  -- financing (indiscernible).

24           THE COURT:  Okay, and that's with a trustee.  I

25   don't want to cut anyone off.  I'm running very late on my

1    calendar.  I already saw I'm moving people that are leaving

2    in further cases ahead of me.  Anybody else want to say

3    anything?

4             MS. GIUGLIANO:  Your Honor, it's Sheryl Giugliano,

5    Ruskin Moscou Faltischek, attorneys for Jason Penner.

6             I just want to point out that there's been no

7    indication about all of these things they've been working on

8    doing.  Nothing has been filed.  We're not at the infancy of

9    the case.  It's November; it was filed in August.  Nothing

10   has been filed.  Nothing has been accomplished.  It's a lot

11   of I'm going to do this, I want to do this.

12            MR. HORN:  That's right.

13            MS. GIUGLIANO:  And, Your Honor, the last thing I

14   would -- Mr. Horn, I'm sorry, I'm not sure to say that on

15   mute, but you're interrupting what I'm saying, so I

16   appreciate that you're frustrated.

17            MR. HORN:  (Indiscernible), that's all I'm saying.

18            MS. GIUGLIANO:  Seem unprofessional that you're

19   showing to me that you just accused Mr. (indiscernible), but

20   I don't appreciate it.

21            I'm sorry, Your Honor.

22            The last argument I wanted to make was with

23   respect to the $250,000 DIP loan that's being pursued.  I'm

24   not sure if it's on a secured or unsecured basis, but I'm

25   not sure what assets the Debtor intends to attach them to or

1    what the purpose or need for it.  So there's been a lot of

2    talk about things that are going to happen, but there's been

3    no statement that I've heard today that explains why this

4    Debtor needs to be in a Chapter 11 case, not one.

5            That's all.  I'll leave it at that, Your Honor.

6    Thank you very much for the opportunity.

7            THE COURT:  Mr. Horn, with respect to assets or

8    anybody in your shop, did the Debtor have business insurance

9    that would have covered that loss of -- the losses he had

10   from the hack?

11           MR. HORN:  I don't believe so, Your Honor.  I

12   don't believe that type of insurance was covered.  And

13   again, I think -- I can get more detail on that, Your Honor,

14   but I do not think so.

15           THE COURT:  All right.  Folks, I don't do this

16   lightly, and again, I'm sure that you have done a lot here,

17   Mr. Horn, and I would expect that you may not be able to

18   file a claim.

19           What I'm going to do here is I find that cause

20   exists, but let me read you 1112.  1112(e) of the bankruptcy

21   code states that a Court must first determine whether cause

22   exists to dismiss or convert.  (Indiscernible) in Paragraph

23   2 in subsection (c) on the request of the party-in-interest

24   and hearing the Court shall convert a case under this

25   chapter to a case under Chapter 7 or dismiss a case under

1    this chapter, whichever is in the best interest of creditors

2    and the estate for cause unless the Court determines that

3    the appointment under 1104(a) the trustee or examiner is in

4    the best interest of creditors and the estate.

5              Section 1112(b)(4) lists 16 examples of causes.

6    The examples are non-exclusive.  In re 1031 Tax Group, LLC,

7    374 B.R. 7893 (Bankr. N.D.N.Y. 2007).  See also In re

8    (indiscernible) Associate, LP, 348 B.R. 627 and 639 (Bankr.

9    N.D.N.Y. 2006), noting that Section 1112(b) contains

10   (indiscernible) to be considered in determining whether

11   causes exists to convert or dismiss a case.  The bankruptcy

12   court has wide discretion to determine if cause exists and

13   how to ultimately adjudicate the case.

14             In evaluating a motion made under 1112(b), the

15   movant has the burden of demonstrating cause by a

16   preponderance of the evidence.  In re Gel, LLC, 495 B.R. 240

17   at 245 (Bankr. E.D.N.Y. 2012) citing Taub v. Taub, In re

18   Taub, 427 B.R. 208 at 231, (Bankr. E.D.N.Y. 2010).  A

19   bankruptcy court has wide discretion to determine whether

20   cause exists, and if cause is present, to decide whether to

21   convert the case to one under Chapter 7 or to dismiss.  Id,

22   citing In re BHS&B Holdings, LLC., 439 B.R. 342 at 346

23   (Bankr. S.D.N.Y. 2010).

24             Once the Court has found there's cause under

25   1112(b), it must then decide whether conversion or dismiss

1   is in the best interest of creditors of the estate.  In re

2   FRGR Managing Member, LLC, 419 B.R. 576 at 580-81 (Bankr.

3   S.D.N.Y. 2009).  (Indiscernible) include whether a Chapter 7

4   trustee is able to liquidate to assets to the benefit of

5   creditors and whether conversion or dismissal would maximize

6   the debtor's enterprise value.

7           With respect to bad faith, courts in this circuit

8   determine bad faith based upon a totality of circumstances.

9   It's a highly factual determination, but again, the facts

10  here are not in dispute and I'm prepared to take Mr. Horn's

11  view of the facts.

12          And again, even in the best light of the facts, we

13  have here, again, a non-operating company.  We have no

14  employees presumably, putting aside this independent person

15  who has just been brought on.  We have no insurable assets,

16  meaning that no assets.  The only assets that we have here

17  are assets that can be managed by anybody.  And, in fact,

18  because the principal -- again, in a perfect world if there

19  was money here in this case, this would be a case where one

20  would strongly consider this court.

21          I would strongly consider the appointment of 1104

22  trustee because of what I view as gross mismanagement of

23  this entity leading up to this filing, these years not doing

24  anything to commence the lawsuit, other than hearing it was

25  too expensive, abandoning kiosks, walking away from this

1   business, having some -- again, having a loan and then

2   trying to secure it with financing or on the day of the

3   filing even though everything that looks bad, you're going

4   to back that up.  Yeah, lots of it looks bad.

5           I know that you've -- it really looks bad, Mr.

6   Horn, and you recognized it and you've been trying to

7   cleanse it.  You've been trying to make it better.  You've

8   been trying to make a showing that this is all going to be

9   able to be okay; the case has been around for two or three

10  months.  Creditors don't want this, you know, 11, okay.

11  They don't really want any 7 either, but that's because they

12  all want to be the first in line to get a judgment.

13          And again, there's nothing here to reorganize, and

14  to liquidate the kinds of things, again, that you need to

15  liquidate, there's no going concern value here.  We don't

16  have an asset that we have to keep in an 11 for -- you know,

17  again, and any asset that would have going concern value.

18  To the extent that we got the license, the fact that I

19  convert it, I mean, that also is an issue that you have to

20  have a license that's in good standing and you don't want to

21  convert a case because that could be a reason, but we don't

22  have that here.  We have to resurrect that license.

23  Converting it is not going to change that.

24          So there's no reason here -- and again, the cost

25  of keeping it in an 11 will far exceed the cost of

1    administration in the 7.  In order to continue to claim this

2    and there's always going to be a case by virtue of the fact

3    that the principal, one principal here, that it's just very,

4    very, very expensive and I don't know that you're ever going

5    to get there.

6            It's important that even if there is no

7    impropriety that there not be an appearance of impropriety

8    in a Chapter 11 case, and I don't know that we ever can get

9    past that, nor should we.  We've got conflict of interest

10   here.  Even if you're not conflicted because, again, you,

11   Mr. Horn, can sit above all of that, and I'm not questioning

12   you on that.  Their principal has conflicts of interest here

13   and, you know, the question about whether or not the actions

14   were pursued against him.

15           Again, the best place for that to happen is in a

16   Chapter 7, and to the extent that we have preferences here

17   or fraudulent conveyances, that's something that a Chapter 7

18   trustee would look into.  And maybe these assets are

19   saleable, maybe somebody wants to buy them on this Zoom call

20   from the trustees, or maybe there'll be a fund created for

21   the trustee to pursue it and could put it all in one place.

22   There are a lot of possibilities here.  Or maybe the trustee

23   will abandon them, abandon them to the Debtor or abandon

24   them to a creditor.

25           So I believe, again, that there's cause, that

1    there's nothing here to reorganize.  There are no assets

2    here that depend upon an 11 to retain their value.  They all

3    can be liquidated and some that otherwise might not be

4    pursued could be pursued by a Chapter 7 trustee.

5            MR. HORN:  Your Honor, (sound glitch) my firm?

6            THE COURT:  No, no, don't interrupt me.  There are

7    a lot of questions as to why this principal, who had a

8    fiduciary obligation once the company was insolvent to ask

9    for the benefit of creditors, okay, didn't do any of that;

10    in fact, walked away from what might have had value then

11    that may not have value anymore.

12            So there's been enough of a showing, based upon

13    the totality of the circumstances here -- again, I know it's

14    not a two asset case like you get in a single asset real

15    estate case where you have two creditors, a single creditor

16    case.  There are competing creditors here, but again,

17    because one of the things bankruptcy is supposed to do is

18    stop a race to the courthouse, I believe that it should stay

19    in bankruptcy.

20            So I believe conversion is appropriate here

21    because there may be assets to administer and a trustee can

22    bring avoidance actions against Zampella and liquidate any

23    assets, and the same experts that the Chapter 11 debtor can

24    employ, the trustee could employ.  So the motion to dismiss,

25    there's cause to dismiss, but I'm converting the case.

1            The other question, I guess no one has raised, but

2     weren't there -- in the papers, didn't you indicate that

3     there's some issues as to whether or not others have

4     membership rights or ownership rights in this Debtor.

5     Again, I don't --

6            MR. HORN:  (Sound glitch) litigation, Your Honor.

7            THE COURT:  Again, exactly.  Maybe -- no one's

8     challenged eligibility here.  I don't know what the

9     percentages are, but exactly.  There are fights among all of

10    the creditors as to everyone getting to the courthouse first

11    and who would get what and who owns the membership interest

12    and who doesn't, questions of potentially subordination.

13    All of that is something that a Chapter 7 trustee can do.

14            So the case is converted.  Mr. Khodorovsky, I

15    would ask you immediately to get on this as far as getting a

16    trustee appointed, and everything else is marked off as

17    moot.

18            MR. HORN:  Your Honor, well again, now the Debtor

19    doesn't have representation.  So even though it's a Chapter

20    7, the Debtor still needs representation.

21            THE COURT:  Yeah, because I don't know if there's

22    -- again, first of all, Mr. Khodorovsky doesn't weigh in on

23    Chapter 7 representation and there's not a lot that a

24    Chapter 7 attorney has to do.  So whether you --

25            MR. HORN:  I'd also like to file a final fee app.

1            THE COURT:  Well, again, it's not a final -- you

2     can file a fee application in the 7.

3            MR. HORN:  I'm not even retained, Your Honor.

4            THE COURT:  Well --

5            MR. KHODOROVSKY:  Your Honor, may I address that?

6            THE COURT:  Yes, Mr. Khodorovsky.

7            MR. KHODOROVSKY:  Thank you, Your Honor.  Nazar

8     Khodorovsky for the U.S. Trustee.  Here's what I would like

9     to suggest, Your Honor, regarding Mr. Horn's motion.  I

10    think actually Mr. Horn is making a very good point and I

11    agree with him, so I would like to address scheduling on

12    that issue if Your Honor would permit.

13            THE COURT:  Okay, go ahead.

14            MR. KHODOROVSKY:  Thank you, Your Honor, and I

15    apologize for taking the time.  I know it is late.

16            Your Honor, Mr. Horn is making a good point.  Now

17    that this case is converted to Chapter 7, in order for Mr.

18    Horn to have a claim under Section 330, which I think that's

19    what he's referring to -- Mr. Horn, you can correct me if

20    I'm mistaken -- he would need to be retained so he can file

21    a fee application.  I think Mr. Horn is making a very valid

22    point.

23            So what I would respectfully suggest, Your Honor,

24    is that the issue of Mr. Horn's retention as Chapter 11

25    counsel from the commencement of the case to the date of

1    conversion be adjourned to a further date so that a Chapter

2    7 trustee could review the arguments made by Mr. Horn and

3    received by my office and maybe even weigh in on the issue.

4    I think there's a new potential to (indiscernible) here, who

5    should weigh in on the allegations that this office has made

6    against Mr. Horn and on Mr. Horn's dissent.

7            So I do think Mr. Horn should be given the chance

8    to track with a new fiduciary and see if he's eligible to

9    potentially file a claim under Section 330.  I think he's

10   making a valid point.

11           Your Honor, I would respectfully request if Your

12   Honor would permit, there's already a date in this case for

13   the 9th of January at 10:30, which is the pretrial date in

14   the removed adversary proceeding, if possible, if just the

15   retention application of Mr. Horn could be adjourned to that

16   date.  By that date a Chapter 7 trustee would be in place

17   and that person, she or he or they, will be able to weigh in

18   on Mr. Horn's retention and be able to have a discussion

19   with Mr. Horn with my office and the retention.

20           THE COURT:  Okay, that's fine with me.  January

21   9th at --

22           CLERK:  If this case is now a 7, that current date

23   is an 11 hearing date.

24           MR. KHODOROVSKY:  Oh, I apologize then, Your

25   Honor.  I was not aware.

1   CLERK:  So unless you want to leave it there or we

2   can move that pretrial to a non-11 date, but it's up to you,

3   Judge, if you want to keep it there for the time being at

4   least for that first hearing.

5   MR. KHODOROVSKY:  Your Honor, may I be just

6   briefly heard on scheduling?  And Mr. Horn, if you'll give

7   me one second.  I do think January 9th, at least would work

8   best for the U.S. Trustee because that way we can ensure

9   someone from my office to it.

10   THE COURT:  January 9th -- we'll do it on Zoom

11   even though it'll be a 7 by then -- at what time?

12   CLERK:  I've got 10:30, Judge.  Who will be

13   submitting the conversion order, Judge?

14   THE COURT:  It would be somebody who's making the

15   motion to dismiss, Miss Rossan.  Miss Rossan, circulate it

16   first to Mr. Khodorovsky and to Mr. Horn and to the others.

17   MS. ROSSAN:  Okay.

18   THE COURT:  Circulate it all around, unless, Mr.

19   Khodorovsky, you want to do it.

20   MR. KHODOROVSKY:  Your Honor, I'm fine with the

21   process Your Honor has suggested.  I appreciate it, thank

22   you.

23   THE COURT:  I appreciate all of the good work, the

24   briefing and all of that.  I don't get enough of that.  I

25   appreciate it and enjoyed reading it and thank you all.

Page 69

1      You've all worked very hard, including particularly, Mr.

2      Horn, but I appreciate it.  Thank you.

3              MR. HORN:  Thank you to my team for putting in the

4      good work in preparing it.

5              THE COURT:  Thank you, team.

6              MS. HARPER:  Thank you, Your Honor.

7              MR. KHODOROVSKY:  Thank you, Your Honor.

8              (Whereupon these proceedings were concluded at

9      11:59 PM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3       I, Rita Weltsch, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Rita Weltsch

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 8, 2023

| **&** | | | |
| --- | --- | --- | --- |

**&**   3:3 4:8 5:12
  20:21 56:19

| **0** |
| --- |

**07039**   3:13

| **1** |
| --- |

**1**   48:3
**10**   7:8
**10/10**   7:4
**100**   32:20 48:2
**10014**   4:4
**10165**   4:11
**10176**   3:6
**1031**   60:6
**10:29**   1:16
**10:30**   67:13
  68:12
**11**   13:7 15:11
  18:15,22 22:12
  22:17 26:12
  31:2 50:2 59:4
  62:10,16,25
  63:8 64:2,23
  66:24 67:23
  68:2
**110**   48:2
**1104**   29:16,20
  60:3 61:21
**1112**   27:6
  30:20 48:24
  49:7 59:20,20
  60:5,9,14,25
**11201**   1:13
**11501**   70:23
**11556-1425**
  3:22

**11:59**   69:9
**11s**   46:2,4
  47:23
**12**   19:5
**12151**   70:7
**14**   2:6
**1425**   3:21
**14th**   6:24
**15**   32:9
**15th**   3:21 14:5
  14:8
**16**   1:15 32:9
  60:5
**180**   38:23

| **2** |
| --- |

**2**   59:23
**2004**   47:25
**2006**   42:15
  60:9
**2007**   60:7
**2009**   61:3
**201**   4:3
**2010**   60:18,23
**2012**   60:17
**2017**   23:12
  40:2
**2021**   8:15
  15:24 16:4,24
  17:1,14 21:14
  30:15 40:2
  53:24
**2023**   1:15
  70:25
**2024**   6:22,23
**208**   60:18
**20th**   6:23

**21st**   3:5
**23-43027**   1:3
**231**   60:18
**240**   60:16
**245**   60:17
**24th**   6:14
**25**   2:1 57:3
**250,000**   13:6
  25:9 45:14,20
  58:23
**271**   1:12
**290**   3:12
**29th**   7:1

| **3** |
| --- |

**30**   2:9,11,14
  38:24
**300**   70:22
**31**   2:8
**3260**   3:12
**330**   66:18 67:9
  70:21
**341**   6:25 16:25
**342**   60:22
**346**   60:22
**348**   60:8
**37**   5:23
**374**   60:7

| **4** |
| --- |

**4**   60:5
**419**   61:2
**427**   60:18
**42nd**   4:10
**439**   60:22
**48th**   4:10
**495**   60:16

| **5** |
| --- |

**5**   46:14 51:3
**5.7**   56:18
**551**   3:5
**576**   61:2
**580-81**   61:2
**5th**   6:20

| **6** |
| --- |

**60**   4:10
**627**   60:8
**639**   60:8

| **7** |
| --- |

**7**   28:12,13,17
  29:5,14,21
  32:22 33:2,10
  33:14,16 35:5
  36:15 43:11
  59:25 60:21
  61:3 62:11
  63:1,16,17
  64:4 65:13,20
  65:23,24 66:2
  66:17 67:2,16
  67:22 68:11
**7893**   60:7

| **8** |
| --- |

**8**   70:25
**8th**   6:16,22

| **9** |
| --- |

**90**   10:10 36:25
  38:24
**96**   19:11
**99**   19:11
**9th**   67:13,21
  68:7,10

**a**

**a.g.** 3:15
**a.g.'s** 19:11
**a.y.** 2:2 3:10
  6:9 49:15
**abandon** 29:23
  39:7 52:21
  63:23,23,23
**abandoned**
  16:21 25:25
**abandoning**
  61:25
**ability** 38:1
**able** 16:10
  23:19 37:11
  59:17 61:4
  62:9 67:17,18
**above** 12:21
  63:11
**absent** 35:9
**absolutely**
  26:11
**abstain** 11:17
**access** 8:2
**accomplished**
  35:5 58:10
**account** 7:3,3
  7:22 13:12,20
  13:21 14:7,13
  54:7
**accountant**
  39:13
**accountants**
  17:15 52:3,3,8
  52:9,10
**accurate** 70:4

**accused** 58:19
**act** 41:1
**acting** 44:25
**action** 9:15
  16:3 21:25
  23:1 25:3
  29:17 51:17
  52:22,22,23
  53:17
**actions** 35:8
  36:17,19,20,22
  36:23 55:12
  56:16 63:13
  64:22
**actual** 18:1
  20:12
**actually** 13:15
  15:20 17:18
  21:12 66:10
**adam** 2:9,12,15
  3:4 5:5,7 9:4
  15:3,7,13
  22:24 24:12
  45:9
**add** 40:22
**additional**
  50:18
**address** 20:4
  32:8 38:3,18
  44:9 47:17
  66:5,11
**addressed**
  10:17
**addresses**
  52:11
**adjourned**
  67:1,15

**adjudicate**
  60:13
**administer**
  24:18 64:21
**administration**
  63:1
**admits** 18:20
  22:17
**adversary**
  67:14
**advice** 46:18
  51:18
**advise** 13:4,5
  46:19
**advised** 55:13
  57:12
**affidavit** 6:24
**affirmatively**
  22:4
**agenda** 24:7
**aggressively**
  51:16
**ago** 6:15 17:2
  19:21 37:10
**agree** 13:15
  66:11
**agreed** 45:6
  46:24
**agreement**
  17:23 42:24
**ahead** 5:8
  11:18 13:8
  15:17 24:3,10
  36:12 37:16
  40:3 46:8
  49:11 56:6
  58:2 66:13

**air** 52:15
**al** 9:4
**alcohol** 57:15
**alex** 5:16 26:19
**allegations**
  67:5
**alleged** 25:16
  27:23
**allegedly** 21:13
  27:22
**alternative**
  27:14 28:20
**amenable**
  35:20
**amend** 33:8
  36:19
**amended** 42:24
**amount** 7:24
**amy** 2:14
**ands** 43:2
**angel** 41:7
**angels** 41:6
**aniello** 4:17
  8:10 9:4,5,6
  43:1
**ann** 3:8
**annexed** 23:4,6
  53:18
**annoying**
  16:20
**answer** 7:3
  9:10,14
**anybody** 25:10
  52:22,23 55:14
  58:2 59:8
  61:17

**anybody's** 56:1
**anymore** 16:5
16:13,19 50:23
64:11
**anyway** 27:16
35:19
**apologize** 12:6
37:25 44:13
48:16 51:9
66:15 67:24
**app** 65:25
**appearance**
63:7
**appearing** 5:3
6:5,8
**appears** 28:10
30:14
**application** 2:1
2:1 25:14 28:4
56:20 66:2,21
67:15
**applies** 49:8
**appoint** 47:6
47:14
**appointed**
65:16
**appointment**
60:3 61:21
**appreciate**
24:11 58:16,20
68:21,23,25
69:2
**approach**
53:10
**approached**
53:10

**appropriate**
12:24 38:13
39:10 64:20
**approved**
57:16
**approximately**
57:3
**arguably** 20:16
**argued** 29:17
**arguing** 49:3
**argument**
15:16 20:1,5
21:7 25:6
37:21,22 48:25
58:22
**arguments**
24:14 26:16
37:7 49:25
67:2
**aside** 61:14
**asked** 11:20
12:4 20:2
**asking** 16:16
**aspects** 22:13
**asserted** 12:11
26:25
**asset** 12:17
17:12 18:16
27:23 33:17,20
33:20 38:20
39:1,18,18
40:5,9,12
43:25,25 50:20
50:22 57:20
62:16,17 64:14
64:14

**assets** 7:5 12:9
12:10 13:17
21:2 22:11,20
22:20 25:23
27:20 29:1,22
31:21 32:1,10
32:13 33:13,21
38:17 39:1
41:19 46:14
50:3 53:5,14
56:16 58:25
59:7 61:4,15
61:16,16,17
63:18 64:1,21
64:23
**assignable**
19:18,23
**associate** 60:8
**assuming**
19:14 27:16
28:20 29:11
32:3 34:12,15
34:20,21 36:7
36:8 43:3,4
**atm** 7:14 17:18
25:24 26:2
**atms** 7:13 8:19
16:22 17:8,16
18:1 22:19
53:22
**attach** 58:25
**attached** 14:10
**attack** 47:8
**attending** 5:11
**attention** 54:7
**attorney** 6:7
31:6 41:11

43:12 65:24
**attorneys** 3:4
3:11,20 4:2,9
5:2 25:20 26:9
58:5
**auction** 46:5
**auctions** 40:10
**august** 6:14 7:7
58:9
**automatically**
10:6
**avenue** 3:5,12
**avoid** 12:21
**avoidance** 35:8
36:17 64:22
**aware** 67:25

| b |
|---|

**b** 1:21 27:6
48:24 52:2,11
60:5,9,14,25
**b.r.** 60:7,8,16
60:18,22 61:2
**back** 7:6 12:14
17:8 23:19
29:24 37:1
39:10 43:14
47:22 54:24
62:4
**backdrop** 9:11
37:24
**backstory** 9:11
23:17
**backwards**
47:7 55:18
**bad** 22:24 42:8
46:18 51:18
61:7,8 62:3,4,5

**bank** 14:10
**bankr** 60:7,8
  60:17,18,23
  61:2
**bankruptcy**
  1:1,11,23
  10:21 12:20
  19:16 22:23
  24:23,25 27:19
  32:22 35:10
  55:10,24 59:20
  60:11,19 64:17
  64:19
**banzhaf** 5:16
  5:17,21,23,25
  26:19,19 35:24
  35:25
**bar** 6:20,21,21
  6:23
**based** 32:20
  61:8 64:12
**basic** 23:21,22
**basically** 11:23
  23:13 28:15
  41:18 42:17
  55:11
**basis** 26:23
  27:3 44:18
  46:16 48:24
  50:14 56:21,25
  58:24
**battle** 37:4
  55:16
**beast** 46:10
  48:4
**beat** 45:5

**behalf** 2:3,10
  2:15 10:23,23
  10:25 12:11
  26:23,25 30:22
  32:14 41:2,20
  49:15 51:3
**believe** 12:10
  16:24 30:19
  40:2 44:20
  59:11,12 63:25
  64:18,20
**belong** 10:22
  11:2 12:15
  24:22 38:8,11
**bend** 43:14
**benefit** 31:19
  31:21 36:4
  44:14,15 53:15
  54:12 55:5,12
  61:4 64:9
**best** 6:1 30:13
  44:25 60:1,4
  61:1,12 63:15
  68:8
**better** 28:20
  33:11 34:4
  41:7 62:7
**bhs&b** 60:22
**big** 55:23
**bigger** 11:6
  40:5 41:2
**biggest** 42:4
**bit** 24:16 25:6
  37:24
**bitcoin** 7:11,14
  7:15,21,23,25
  8:1,2,2,6 16:22

  18:17 21:10
  22:7 23:9,14
**bitcoins** 7:13
**bitlicense**
  18:17 19:20
  20:12,16,20
  25:24 26:2
  27:24,25 40:6
  50:4,9 57:2
**bodega** 16:23
  17:20
**bodegas** 18:3
**borrow** 45:19
  45:20
**bothered** 16:6
  16:20 22:3
**bought** 39:20
  55:20
**brad** 5:12
**bradley** 4:13
**breach** 8:15,17
  8:22 27:22
  31:22
**brick** 17:23
**brief** 26:20
  30:3 32:9
**briefing** 68:24
**briefly** 6:13
  15:9 68:6
**bring** 29:17
  34:1 35:16
  37:11 47:16
  64:22
**brings** 19:1
  21:1
**brooklyn** 1:13
  46:9,10

**brought** 26:23
  26:25 29:14
  30:21 42:20
  61:15
**burden** 27:6
  29:12 49:18
  60:15
**bureau** 19:8
**burial** 29:5
**bury** 36:15
**business** 7:11
  16:7 18:19
  21:7 39:7
  46:21 50:1
  59:8 62:1
**businesslike**
  16:8
**buts** 43:2
**buy** 39:20
  43:25 63:19
**buying** 23:2

                c

**c** 1:12 3:1 5:1
  52:4 59:23
  70:1,1
**cadman** 1:12
**calendar** 58:1
**call** 34:8 63:19
**called** 21:2
  54:7
**calls** 39:16
**captions** 10:24
**card** 9:2 55:9
  55:10
**care** 42:4 45:11
  55:17

case 1:3 2:6,11
2:14 6:11,12
6:14 9:11 11:8
11:9 13:20
15:1 21:16,20
21:21 22:24
25:19 26:12,24
28:21 29:2,3
29:15,19 34:2
35:3 38:4
42:18 44:1
45:9 46:21
47:1,7,23,24
47:25 48:2,2
49:21 51:20,21
55:22 56:10,10
56:12,13 58:9
59:4,24,25,25
60:11,13,21
61:19,19 62:9
62:21 63:2,8
64:14,15,16,25
65:14 66:17,25
67:12,22
cases 27:17
30:5,7 34:12
38:9 46:7,11
58:2
cash 7:24
casino 17:21
casinos 17:21
cause 27:7,8,9
28:21 29:12
30:7,19 32:4
59:19,21 60:2
60:12,15,20,20
60:24 63:25

64:25
causes 60:5,11
cent 48:2
certain 12:25
13:3 16:9
certainly 16:16
17:3 19:24
20:8 27:13
28:13 31:6
certified 70:3
challenged
65:8
chance 67:7
change 9:25
10:4 41:8
62:23
chapter 13:7
15:11 18:15,22
22:12,17 26:12
28:12,13,17
29:4,14,21
33:10,14,16
35:5 43:11
46:2,4 47:23
50:2 59:4,25
59:25 60:1,21
61:3 63:8,16
63:17 64:4,23
65:13,19,23,24
66:17,24 67:1
67:16
character
55:20 56:1
charade 31:10
31:11,11,12,12
chasing 34:11

chief 42:16,17
choice 27:9,10
chose 24:23
25:1
chosen 36:2
circuit 61:7
circular 25:6
35:13
circulate 68:15
68:18
circumstances
35:17 61:8
64:13
citing 60:17,22
city 18:2 19:9
claim 12:12
24:21 26:24
40:23 45:8
46:14,25,25
51:2,3,4,6
53:25 54:8
55:17 59:18
63:1 66:18
67:9
claims 10:22
11:2,3 12:9
17:14 21:2,5
24:24 26:23,25
28:11,24,25
30:10,11,21,23
31:23,23 33:3
33:12 53:5,6,6
56:21
clarify 12:6
class 40:12
classes 12:17
40:10

chief 42:16,17
classification
12:24
classifications
13:1
classified 13:3
clean 42:20
cleaned 52:11
cleanse 62:7
cleanup 43:19
clear 11:15
12:16 14:12
42:25 47:11
49:22,23
clerk 10:2,6
67:22 68:1,12
client 5:22
35:20 47:21
client's 36:4
close 21:6
closed 16:4,17
22:2 54:4
cloud 8:16 44:8
code 6:17
27:10 59:21
coindado
30:14,23 32:17
32:19
colleagues
37:25 46:17
collect 29:18
34:8
collectability
26:7
collectable
39:16
come 24:16
25:23 31:2

36:25 39:15
**coming** 47:22
**commence**
52:21,22,23
61:24
**commencem...**
66:25
**commencing**
41:19
**comments**
35:25
**commodity**
57:5
**company** 16:17
16:22 17:9
22:2 28:10,11
29:4 32:2
33:18 41:2
52:4 53:23
54:3 57:14,15
61:13 64:8
**compelling**
24:14
**competing**
31:25 33:3
64:16
**complaint** 55:2
**complete** 6:16
**complicated**
28:5
**compromised**
22:5
**conceded**
33:17
**conceding** 49:1
**concern** 53:23
54:3 62:15,17

**concluded** 69:8
**conference** 2:6
6:13
**conflict** 45:16
63:9
**conflicted**
30:17,18 31:3
63:10
**conflicting**
22:18
**conflicts** 55:17
63:12
**confused** 8:4
**congress's** 48:5
**conjure** 22:11
**connection** 6:2
**consent** 36:8
**consider** 61:20
61:21
**considered**
17:11 23:15
60:10
**constantly**
20:3
**consuming**
20:23
**contains** 60:9
**contested** 7:10
14:23
**contesting**
18:22
**context** 23:5
28:9 29:21
**contingency**
34:7 46:16
50:13 56:21,25

**continue** 34:12
35:9 36:10
63:1
**continuing**
34:19
**contract** 21:16
**contrary** 35:6
**convenient**
22:9
**conversations**
47:11
**conversion**
30:6,20 32:2,8
34:24 35:20
36:5 60:25
61:5 64:20
67:1 68:13
**convert** 27:11
28:21 29:13
47:6,13 48:14
59:22,24 60:11
60:21 62:19,21
**converted**
65:14 66:17
**converting**
62:23 64:25
**conveyance**
36:18,22
**conveyances**
63:17
**convince** 31:10
**core** 11:3
**corporation**
33:19 36:15
41:3
**corporation's**
36:15

**correct** 5:25
9:8 30:14 41:8
66:19
**correctly** 30:5
**cost** 31:2 33:10
39:14,20,24,25
62:24,25
**costs** 39:19
**cottonwood**
1:7 2:3 9:3
10:24 11:1
21:25 23:9,14
23:16 32:18
49:15
**counsel** 2:2
5:10,12,13
19:12 20:21
24:4,12,22
25:9 26:22
31:7 34:3,3
35:1 43:8
46:15,19 49:8
50:11,13,14
52:12 55:3,21
56:8 66:25
**counsel's** 26:6
26:16
**country** 70:21
**couple** 11:5
41:5
**course** 26:13
26:17 35:2,17
48:14
**court** 1:1,11
5:2,6,13,15,18
5:22,24 6:1,7
6:10 7:17 9:12

Case 1-23-43027-nhl    Doc 53    Filed 12/08/23    Entered 12/08/23 17:18:50

9:14,19,23
10:3,7,13,14
10:20 11:4,11
12:20 13:4,5,8
13:11 14:4,12
14:16,20,22
15:14,16,19,19
16:2,8 17:17
18:5 19:3,7,9
19:12,13 21:24
22:25 23:2,5,5
23:6,7,11,20
23:23 24:1,3,9
24:25,25 25:7
26:14,17,18
27:4,15,25
28:14 31:1
32:10,14,21
33:13,15 34:21
35:4,22,24
36:1,7,10,21
37:4,6,16,20
39:3,6,19,24
40:1,3,15,18
40:22 41:17,24
42:10,20 43:3
43:21 44:11,22
44:24 45:19,24
46:7 47:15
48:7,11,14,18
48:22 49:7,12
49:23 50:15
51:5,19,23
52:5,16 53:1,2
53:11,14,17
55:11,25 56:4
56:6,24 57:7

57:18,22,24
59:7,15,21,24
60:2,12,19,24
61:20 64:6
65:7,21 66:1,4
66:6,13 67:20
68:10,14,18,23
69:5
**court's** 24:6
**courtesy** 54:21
54:22,23
**courthouse**
27:20 28:22
33:3 36:24
64:18 65:10
**courthouses**
31:25
**courts** 10:19
61:7
**covered** 59:9
59:12
**create** 34:1
43:14 44:5,6,7
**created** 8:1
27:22 35:8
63:20
**creating** 41:23
**creditor** 2:11
5:5,10,17 7:9
15:6,13 22:24
23:24 40:20,23
40:23 43:23,25
63:24 64:15
**creditors** 6:22
7:9 11:21 15:3
15:8 31:19,21
32:13 33:11

38:9 41:20
48:2 49:25
50:5 53:15
60:1,4 61:1,5
62:10 64:9,15
64:16 65:10
**crook** 42:4
**crosstalk** 48:12
54:14
**crypto** 40:14
**cryptocurrency**
8:7
**crystal** 42:25
**cure** 25:13
**current** 67:22
**customer** 7:23
16:18
**customer's**
7:25 8:2
**customers** 8:7
8:18 22:6,7
**cut** 57:25
**cybergenics**
42:12

**d**

**d** 5:1
**date** 6:20,21,21
6:23 10:11
13:19 66:25
67:1,12,13,16
67:16,22,23
68:2 70:25
**day** 25:17
34:14 35:19
42:11 44:19,20
44:20 47:12,17
62:2

**days** 10:10
36:25 38:23
**deal** 14:22 16:6
29:5 46:21
**dealing** 16:12
36:17
**dealt** 42:5
**debtor** 1:9 2:2
2:2 3:11 6:23
7:2,4,18 8:5,19
8:24 9:2 10:23
11:13,22,22,23
12:1,9 13:16
13:16,20 14:7
15:23 16:4
17:13,19,25
18:12,13,13
20:9,17,19
21:2,10,11,18
21:19,20,22
22:5,11,15,22
23:3,14,19
24:18,23 25:1
25:4,5,22
26:24 27:1
28:17 30:15
31:5 32:15,19
33:1,1 37:8
39:4,13 40:1
41:3,11 49:15
50:19 51:4
52:2,18 53:19
53:20 54:6
56:8,8,22
58:25 59:4,8
63:23 64:23
65:4,18,20

**debtor's** 8:9,10
8:16,18 21:6
21:23,25 22:6
23:8 24:22
25:9,14,15,21
26:22 28:4
29:17,18 48:20
61:6
**debtors** 19:19
42:8,9
**december** 17:1
70:25
**decide** 28:20
29:22 60:20,25
**decided** 35:15
39:6
**decides** 29:22
**decipher** 17:6
**decision** 21:6
29:12 43:2
**decisions** 23:6
**defensive**
52:19
**delay** 25:2 26:7
**delinquent**
18:20
**demanded**
43:9
**demonstrated**
48:24
**demonstrates**
45:12
**demonstrating**
27:6 47:1
60:15
**deny** 20:9

**department**
4:1 18:18
**depend** 64:2
**depending**
12:22
**depose** 47:19
47:19
**deposit** 7:24
**deposited** 7:25
**deposition**
16:16 21:24
**depreciation**
39:14
**depth** 20:22
**derivative** 11:1
11:2 12:8,15
25:3 26:23,25
38:9,10
**descriptions**
26:1
**despite** 18:21
23:7
**detail** 59:13
**determination**
61:9
**determinations**
31:7
**determine** 27:8
27:9 33:16
49:7 57:9
59:21 60:12,19
61:8
**determines**
60:2
**determining**
43:22 60:10

**detract** 46:13
**dfs** 20:8
**died** 52:5,6
**dies** 52:8
**differences** 8:6
8:20
**different** 8:21
24:16,17 26:3
28:9 31:24
32:23 38:21
**difficulties**
16:11
**difficulty** 57:4
**digital** 8:16
21:4,9,15
50:10 51:1
53:25 54:8
55:1 56:17
**diligent** 56:14
**diligently** 38:1
55:6
**diminution**
49:19
**dip** 13:6,12,21
14:13 25:9,19
58:23
**direction** 41:12
**director** 31:18
55:22
**disagree** 12:6
**disclosed** 8:23
9:2 38:20 39:1
**discrete** 32:7
**discretion** 27:8
60:12,19
**discuss** 38:12
42:1

**discussion**
25:10 27:14
67:18
**discussions**
8:12 36:11
**disguised**
47:12
**dismiss** 2:8,11
2:14 7:9 14:24
15:5,8 24:2,14
27:11,15 28:21
29:13 30:4
47:13 59:22,25
60:11,21,25
64:24,25 68:15
**dismissal** 30:6
30:21 32:3,8
35:21 36:5
48:13 61:5
**dismissed**
15:12 35:3
**dispositive**
15:15 23:6
**dispute** 8:13
49:4 61:10
**disputed** 8:14
**dissent** 67:6
**distribution**
29:1
**district** 1:2
9:22,24,25
**doc** 2:9
**document** 2:11
**dogs** 45:11
**doing** 16:13,19
33:12 41:4
53:12 58:8

61:23

**dollars**  7:22,23
51:12

**drops**  36:23

**duty**  13:2
31:16,22

### e

**e**  1:21,21 3:1,1
5:1,1 59:20
70:1

**e.d.n.y.**  60:17
60:18

**earlier**  35:7

**early**  47:1,25

**earn**  8:4,5

**east**  1:12 4:10

**eastern**  1:2
9:22,24

**ecf**  2:9

**echo**  35:25

**economical**
34:18

**ecro**  1:25

**effective**  22:1

**either**  7:25
10:5 11:25
12:2 20:2 23:1
26:9 31:4
43:23 62:11

**eligibility**  65:8

**eligible**  67:8

**emerge**  22:23
50:2

**employ**  2:1,1
64:24,24

**employed**  55:3
55:3

**employee**
22:15

**employees**
16:12,18 22:18
61:14

**engaged**  46:15

**engaging**  56:19

**enjoyed**  68:25

**ensure**  68:8

**enterprise**  61:6

**entire**  11:8,9
16:22 20:5
32:6

**entirely**  21:21

**entities**  30:12

**entity**  17:23
27:1,1 28:23
30:12 31:20
32:17 41:20
61:23

**entry**  5:23

**equity**  35:4

**equivalent**
7:24

**eric**  2:3 3:17
9:9

**estate**  10:22
11:2 12:11,14
12:15 17:12
24:23 25:4,4
30:22 32:1
34:1,2,4 35:8
38:11,11,21
49:19 55:5
60:2,4 61:1
64:15

**estimate**  53:6

**et**  9:4

**ethical**  41:13

**evaluating**
27:5 60:14

**event**  27:1

**everybody**
32:23 34:18
37:18

**evidence**  20:24
21:9,12 23:21
27:7 41:4
48:24 60:16

**evidentiary**
37:19 41:25
47:18 48:17,18
48:19,22 49:4

**exactly**  17:24
42:22 65:7,9

**examine**  29:5

**examiner**  60:3

**example**  44:16
50:22

**examples**  60:5
60:6

**exceed**  62:25

**except**  6:17

**excerpt**  53:18

**exchange**  8:6

**exchanges**  8:8

**exclusive**  60:6

**excuse**  22:9
47:13

**exercising**  13:2

**exhibit**  14:25

**exist**  24:23
25:5 30:23

35:9,10 36:21
36:21,23 50:23
54:9

**existed**  35:15

**existing**  8:1

**exists**  27:8 30:7
30:19 59:20,22
60:11,12,20

**expect**  59:17

**expensive**
33:24,25 47:24
48:4 51:17
61:25 63:4

**expert**  53:19
53:19,22,24

**experts**  53:18
54:1,1 64:23

**expired**  50:18

**explain**  46:17

**explained**  41:1

**explains**  59:3

**extent**  27:20
34:1,3,9,10
43:12,24 62:18
63:16

**eye**  30:8

### f

**f**  1:21 70:1

**faces**  45:3

**fact**  11:2 16:9
17:13 18:21
20:7 28:23
34:8 38:25
46:14 50:17
57:5,10 61:17
62:18 63:2
64:10

| | | | |
|---|---|---|---|
| **facts** 38:2 49:1 | **fifth** 3:5 | 66:1 | **forwards** |
| 49:1,2,2 52:15 | **fight** 47:21 | **finally** 21:1 | 55:18 |
| 61:9,11,12 | **fights** 65:9 | **financial** 18:18 | **found** 60:24 |
| **factual** 49:4 | **figured** 7:12 | **financing** | **four** 9:1 |
| 61:9 | **file** 6:24 13:25 | 57:23 62:2 | **fox** 42:12 |
| **failing** 50:19 | 15:14 17:15 | **find** 32:3 51:16 | **frankly** 39:17 |
| **failure** 29:17 | 21:21 22:15,25 | 59:19 | **fraudulent** |
| 29:18 | 24:23 46:4 | **finding** 29:11 | 36:18,22 63:17 |
| **faith** 22:24 | 47:6 51:12 | **fine** 5:3 28:13 | **free** 29:24 55:9 |
| 38:5,5,16 61:7 | 53:5 55:2 | 41:12 45:23 | 55:10 |
| 61:8 | 56:20 59:18 | 67:20 68:20 | **frgr** 61:2 |
| **faltischek** 3:19 | 65:25 66:2,20 | **firm** 6:9 14:3 | **friendly** 37:13 |
| 5:10 58:5 | 67:9 | 19:11 64:5 | **frightened** |
| **familiar** 42:11 | **filed** 2:3,9,11 | **first** 6:12,13 | 7:11 |
| **far** 9:19 31:1 | 2:14 6:14,15 | 10:22 11:7 | **front** 37:12 |
| 33:24 36:13 | 6:16 7:4,7 | 12:22 15:12 | 46:11 55:22 |
| 42:9 62:25 | 10:23,23,24,25 | 17:6 21:8 32:5 | **frustrated** |
| 65:15 | 14:9 15:13,19 | 32:24 35:2,9 | 58:16 |
| **february** 6:23 | 17:13,15 21:15 | 35:21 38:18 | **full** 9:10,11 |
| **fee** 15:2 18:2 | 21:20 22:10,24 | 49:12 51:19 | 44:15,15 |
| 34:7 50:14 | 24:13 25:4,5 | 59:21 62:12 | **fully** 5:6 |
| 65:25 66:2,21 | 25:10 26:6,20 | 65:10,22 68:4 | **fund** 13:7 |
| **feel** 16:5,11,13 | 36:1 38:4,5,15 | 68:16 | 63:20 |
| 16:19 45:23 | 44:18,19,19,20 | **floor** 3:5,21 | **funneled** 32:19 |
| **feeling** 17:7 | 46:2,11,18 | 4:10 | **further** 58:2 |
| **feels** 42:2 | 50:12 54:9 | **focus** 39:18 | 67:1 |
| **fees** 25:20 | 56:13 58:8,9 | **folks** 28:9 | |
| 26:10 48:2 | 58:10 | 59:15 | **g** |
| **felt** 23:7 | **filing** 8:13 | **foregoing** 70:3 | **g** 5:1 |
| **fiduciary** 13:2 | 22:17 25:17 | **forth** 43:14 | **garrity** 55:23 |
| 30:24 31:16,22 | 28:25 35:10 | 56:11 | **gasp** 22:10 |
| 38:13 41:3 | 44:21 51:22 | **forum** 10:18 | **gather** 11:21 |
| 42:24 44:24 | 61:23 62:3 | 10:20 36:21 | **gel** 60:16 |
| 45:13 50:23 | **filings** 17:7 | 37:13 38:8 | **general** 6:22 |
| 64:8 67:8 | **fill** 38:23 | **forums** 36:22 | **getting** 11:6 |
| **fiercely** 18:22 | **final** 17:14,15 | **forward** 25:23 | 28:25 51:23,25 |
| | 52:11 65:25 | | 52:1,17 57:4 |
| | | | 65:10,15 |

**gift** 45:14
**giugliano** 2:10
  3:24 5:9,10
  23:25 24:1,3,4
  24:4,11 34:23
  34:25 35:1,23
  58:4,4,13,18
**give** 5:22 9:10
  23:5 37:24
  44:16 49:9
  54:22 68:6
**given** 12:14
  25:17 56:22
  67:7
**gives** 27:10
**glitch** 5:21 6:3
  34:2 43:21
  64:5 65:6
**global** 33:6
**go** 5:6,7 14:24
  15:17,22 18:7
  20:11 23:1
  24:3,7,9,9
  27:16,16 28:23
  29:10,24 32:5
  32:5 37:16
  39:9 40:3 46:7
  47:10 49:11
  56:6 66:13
**goes** 12:23 31:2
**going** 6:2,2,3
  7:12 10:3
  12:21 13:25
  21:18 25:12
  26:4 28:6,9
  30:12 31:7,9
  34:11 36:12

37:11 38:2
  39:18 43:9
  44:7 46:15
  47:17 53:23
  54:3 58:11
  59:2,19 62:3,8
  62:15,17,23
  63:2,4
**gold** 40:9
**goldberg** 3:3
**good** 5:4,9,16
  6:6 24:12 38:4
  38:5,15 41:2
  43:17 52:1
  62:20 66:10,16
  68:23 69:4
**gotten** 6:5
**governmental**
  6:21,22
**granted** 20:13
**great** 41:15
**gregory** 15:4
**gross** 8:4,5
  61:22
**group** 60:6
**guarding**
  42:12
**guess** 7:21 12:7
  19:22 27:18
  28:19 50:16
  65:1
**guy** 42:6,7,14
**guys** 45:4
  49:11 54:16,16
  54:16,16 57:11
  57:11

**h**

**h** 2:3 3:17
**hack** 8:15,15
  16:1 21:10,13
  22:3,8 54:2,5
  59:10
**hacked** 21:5,9
  22:2,6
**hair** 47:23
**hand** 29:9 46:5
  54:18
**happen** 26:1,4
  59:2 63:15
**happened** 8:21
  21:12,13 23:21
  49:2 52:20
**happy** 9:10
  35:16 47:17,18
  47:18,19,20
**hard** 17:5
  40:16,19 44:6
  52:18 69:1
**harper** 3:15
  49:16 56:3,5,5
  56:7,7 57:1,9
  69:6
**hear** 28:6
  37:20
**heard** 5:18
  18:23 36:1
  37:17,21 59:3
  68:6
**hearing** 2:1,6,8
  2:14 14:19
  37:19 42:1
  47:18 48:17,18
  48:19,22 49:5

59:24 61:24
  67:23 68:4
**heaven** 44:22
**heavily** 52:12
**held** 49:23
**henhouse**
  42:12
**hershey** 1:22
**hi** 49:14
**high** 44:22
**highly** 20:11
  20:22 22:9
  61:9
**hijack** 24:6
**hilco** 40:9
**hired** 22:16
  53:19
**hoguet** 4:8
  5:12
**hold** 57:11,11
  57:16
**holdings** 60:22
**hon** 1:22
**honor** 5:4,9,16
  6:6 7:16 9:9,10
  9:18 10:15,22
  12:5,8 13:9,14
  13:19,22,22,24
  14:1,5,8,11,15
  14:19,21 15:9
  24:5 25:8
  26:19 30:1,2,5
  30:5,10,16,19
  30:25 34:25
  35:16,23 37:17
  37:23,24 38:4
  38:6,7,8,14

39:5,8,11,13
39:22 40:4,21
41:16,21 42:2
42:2,10,22,25
43:20 44:9,14
44:16,23 45:1
45:7,14,21,22
45:25 46:11,13
47:5,10,16,22
48:5,9,10,16
49:6,14 51:7
52:7,15,25
53:9,10,16
54:25 55:4,6
55:15,16 56:3
56:7,9 57:1,20
58:4,13,21
59:5,11,13
64:5 65:6,18
66:3,5,7,9,12
66:14,16,23
67:11,12,25
68:5,20,21
69:6,7
**honor's** 9:22
**hope** 24:19
**horn** 2:3 3:17
7:16 9:9,9,13
9:16,21 10:5,9
10:15,21 12:5
13:9,21 14:2,4
14:15,18 20:4
20:15 24:21
27:5,24 29:8
30:13 32:6
37:2,3,5,14,17
37:23 39:5,8

39:22,25 40:2
40:4,17,21
41:16,21,25
42:22 43:3,20
44:9,12,23
45:1,21,25
46:9 47:16
48:9,13,16,20
49:6,11 50:3,7
51:7,19,21,25
52:7,25 53:9
53:13 54:10,13
54:15,16,20
57:11,20,23
58:12,14,17
59:7,11,17
62:6 63:11
64:5 65:6,18
65:25 66:3,10
66:16,18,19,21
67:2,6,7,15,19
68:6,16 69:2,3
**horn's** 30:9
31:3,9 61:10
66:9,24 67:6
67:18
**host** 46:3

**i**

**idea** 17:9 18:11
26:8 36:24
**ifs** 43:2
**immaterial**
12:18
**immediately**
14:19 65:15
**impact** 21:6

**impacted** 21:5
**impeccable**
55:19
**important** 24:2
44:12,14 63:6
**improper**
33:18
**impropriety**
63:7,7
**impugning**
55:25
**inaction** 50:23
**inch** 41:18
**include** 61:3
**including** 14:9
69:1
**inconsistencies**
8:20
**independence**
44:6
**independent**
43:15,17 55:21
55:22 61:14
**indicate** 65:2
**indicated**
18:14 49:21
**indication** 58:7
**indiscernible**
7:20 10:3
14:25 19:22
27:17 29:3
30:13,22 37:1
39:6 48:23
49:16,17,21,24
50:7,8,9 54:19
57:22,23 58:17
58:19 59:22

60:8,10 61:3
67:4
**individual** 11:9
11:12
**individually**
10:25 32:16
33:4
**infancy** 56:10
58:8
**information**
22:6,19 39:22
39:23 51:24,25
52:1
**initial** 2:6 6:12
15:2,7 17:6
**initially** 17:6
20:19 23:10
**inquiry** 56:11
**insiders** 13:4
**insist** 56:9
**insolvent** 31:18
64:8
**instance** 35:2
35:21
**insurable** 7:5
13:16 61:15
**insurance** 7:2
13:12,18 59:8
59:12
**intact** 17:11
**intended** 22:22
**intends** 58:25
**intention** 44:13
**interest** 45:8
59:23 60:1,4
61:1 63:9,12
65:11

| | | | |
|---|---|---|---|
| **interests** 33:13 44:3 | **january** 6:22 67:13,20 68:7 68:10 | **keeping** 62:25 | 18:8,9,13,15 18:22,23,25 |
| **interject** 53:16 | | **kenney** 4:8 5:13 | 19:22,23 20:2 |
| **interrupt** 51:7 54:15,23 64:6 | **jason** 2:8,10 3:20 4:9,18 | **key** 36:14 | 20:11,16,20,22 21:16,19,20 |
| **interrupting** 44:13 58:15 | 5:11 9:6 15:3 23:24 24:5 | **keys** 8:2 28:8 | 22:2,3,19 23:5 |
| **inured** 36:4 | 35:1 45:10 58:5 | **khodorovsky** 4:6 6:6,7 13:11 | 25:2,3 28:3,3,5 28:15,15,25 |
| **investigate** 30:24 35:14 | **jennifer** 2:14 3:8 5:5 15:6 | 13:14,14,22,23 14:5,21 28:8 | 29:24 30:10 31:15,17,18 |
| **investigated** 30:8,8 | **job** 33:16 43:15 | 29:9,10,25 30:1,2 32:17 | 33:15 34:14,21 35:15 36:10,19 |
| **involved** 11:16 42:18 51:20,21 52:12 55:23,24 | **joinder** 2:8 24:13 26:20 | 56:2 65:14,22 66:5,6,7,8,14 67:24 68:5,16 | 37:8 38:1,13 39:15,16,19,24 39:25 40:8,11 |
| **irrelevant** 50:2 | **joined** 7:9 15:3 15:8 23:24 | 68:19,20 69:7 | 41:2,6,8,17 |
| **issue** 11:5,25 13:13 15:14,21 | 26:18 | **khodorovsky's** 47:4 | 42:3,5,6,11 43:4,24 44:2 |
| 22:25 25:13 32:7 40:4 | **joke** 23:12 | **kind** 12:2 13:10 17:5,12 | 44:19 45:10 46:3,17,19 |
| 47:23 48:9 62:19 66:12,24 | **judge** 1:23 23:2,7,11 | 18:19 21:6 23:17,18 33:1 | 47:8 48:15 50:5,6,7,11 |
| 67:3 | 37:14 55:22 68:3,12,13 | 36:11 | 52:22 53:3,4,5 |
| **issued** 6:20 20:16 57:3 | **judgment** 12:22 23:1 | **kinds** 15:21 31:23 62:14 | 53:7,11,18,19 55:15 56:13,14 |
| **issues** 8:22 11:6 24:2 | 34:15,16 62:12 | **kiosk** 39:2 | 57:7 62:5,10 62:16 63:4,8 |
| 48:25 51:14 65:3 | **jump** 45:17 47:3 | **kiosks** 7:15,18 25:24 26:3 | 63:13 64:13 65:8,21 66:15 |
| **it'll** 68:11 | **jumping** 38:19 | 38:18,19,20 39:7,10,12,14 | **known** 42:15 |
| **i'm** 6:3 | **justice** 4:1 | 39:20 40:5 52:21 61:25 | **knows** 17:3 18:13,14 20:5 |
| | **justify** 22:11 | **know** 7:3,13 9:1,25 11:15 | 23:23 55:10,10 |
| **j** | **k** | 11:24 12:21 13:2,12 14:17 | |
| **j** 4:13 | **kaiser** 56:19 | 15:9,15 16:9 17:4,8,11,21 | **l** |
| **jail** 55:8,10 | **keep** 27:17 | | **langberg** 13:2 22:16 25:20 |
| **james** 3:16 49:14 | 34:12 47:22 62:16 68:3 | | 26:10 30:17 |

38:13 42:14,15
42:15,23 43:1
43:4,6 45:13
46:24 55:21
**language** 42:13
**lapsed** 18:20
**late** 57:25
66:15
**latham** 20:21
**laugh** 45:1
**law** 21:17 35:9
38:2 48:15
49:21,23 56:10
**lawsuit** 21:3,3
21:15 22:9
25:25 27:21
56:17 61:24
**lawsuits** 41:19
**lawyer** 51:11
51:16
**lead** 15:4 16:16
**leading** 61:23
**learn** 7:12
**lease** 17:22
18:2
**leases** 16:23,25
**leave** 20:23
26:16 46:16
59:5 68:1
**leaving** 58:1
**led** 16:15
**left** 16:24 17:2
18:6
**legal** 70:20
**legitimate**
31:13

**letter** 7:4
**level** 42:19
**liable** 12:4
**license** 17:22
18:17,17 57:14
57:15,17 62:18
62:20,22
**licensed** 7:18
**licenses** 57:3
**light** 21:18
61:12
**lightly** 59:16
**likelihood**
22:21 49:20
**likely** 24:19
**likes** 15:25
42:13
**limbo** 9:23
**limitations**
21:17 50:17
51:1
**line** 62:12
**lips** 5:19
**liquidate** 32:11
32:13 55:11
56:15 61:4
62:14,15 64:22
**liquidated** 64:3
**liquidation**
24:20 49:22,24
50:3
**listen** 5:13 45:4
54:20
**lists** 60:5
**litigating** 32:14
33:11

**litigation** 5:13
8:25 10:16,17
11:16 12:13
15:14 19:8,11
20:20 24:21,24
25:2 26:5,6
27:16 28:14
34:13,19,20
35:11 36:10
37:12 38:7,15
43:9 50:10
53:7 65:6
**litigations** 9:1
32:23 38:6
52:13
**little** 7:11,14
8:4 24:16 25:6
25:6 35:13
37:24 38:23
**livingston** 3:13
**llc** 2:4 3:10
8:10 9:3,3
30:14 32:19
40:25 49:16
60:6,16,22
61:2
**llp** 3:3 4:8
**loan** 8:11 23:10
23:13,18 25:10
25:16,19 44:18
45:6,7 58:23
62:1
**loaned** 23:8
**located** 39:17
**long** 18:25
23:25 29:4
37:10 40:1

46:20 51:15
**look** 10:24
29:14,21,23
33:6,22 51:16
63:18
**looked** 23:11
**looking** 35:3
43:21 56:14
**looks** 31:11,11
31:12 37:7,8
38:2 62:3,4,5
**looksee** 33:22
**lord** 1:22
**loss** 59:9
**losses** 59:9
**lost** 21:10 22:6
22:7
**lot** 6:10 7:8
10:16 15:21
20:11 28:16
34:13,17 37:6
37:9 49:10
52:24 58:10
59:1,16 63:22
64:7 65:23
**lots** 19:15
31:13 62:4
**lovely** 42:6,13
**lowenstein**
42:17 48:1
**lp** 60:8

|  m  |
| --- |

**m** 55:23
**machine** 17:18
**machines**
27:21 29:18

| | | | |
|---|---|---|---|
| **made** 13:1,3 15:2,7 20:1 23:10,13 24:12 26:13 32:24,25 33:1 35:7 60:14 67:2,5 | **mansfield** 3:16 49:14,14 50:25 51:10 | **mentioned** 54:2 | **mortar** 17:23 |
| **main** 56:11 | **maria** 3:15 56:5,7 | **met** 29:11 50:12 | **moscou** 3:19 5:10 58:5 |
| **main's** 27:13 | **marked** 65:16 | **million** 46:14 48:2 51:3 56:18 | **motion** 2:8,11 2:14 6:18,19 10:1,4 14:23 14:24 15:2,2,5 15:7 20:1 23:22,23,23 24:13 25:10 27:2,5,14 30:4 47:6,12,13,13 60:14 64:24 66:9 68:15 |
| **mair** 56:19 | **marketed** 20:25 | | |
| **make** 11:13,18 12:16,23 25:6 25:8 26:21 27:10 32:3,21 32:22 33:7 35:6 42:25 51:8,13 52:24 53:13 55:14,18 58:22 62:7,8 | **material** 49:4 | **millions** 51:12 | |
| | **matrix** 6:15 | **mineola** 70:23 | |
| | **matter** 1:5 27:2 30:8 42:7 42:7,10 45:14 54:20 57:21 | **minus** 39:14 | |
| | | **minute** 7:1 | |
| | | **misleading** 25:7 | |
| | **matters** 26:22 36:9 | **mismanagem...** 29:19 61:22 | |
| | **maximize** 61:5 | **missed** 27:13 | **motions** 7:8 24:2 |
| **makes** 14:23 31:14 33:23 34:10 35:4 43:1 | **mean** 16:12,15 17:5 20:19 21:10,15,19 29:2,15 31:12 31:16 33:7,16 34:9,17 36:18 40:6 41:10 42:1 43:13 44:2 46:5,10 50:12,16 52:23 62:19 | **mistake** 14:2 17:14 | **mount** 3:12 |
| | | **mistaken** 66:20 | **movant** 27:6 32:5 60:15 |
| | | **mistakes** 52:10 | **movants** 49:18 49:25 50:5 |
| | | **moelis** 40:13 | **move** 15:23 23:1 68:2 |
| **making** 20:4 21:7 23:18 32:15 37:7 45:3 66:10,16 66:21 67:10 68:14 | | **moment** 13:1 27:23 | **moving** 5:19 5:19,20 55:5,6 58:1 |
| | | **money** 7:20 8:23 28:16 29:20 32:18 33:10 34:1,13 34:15 61:19 | |
| | | | **mute** 6:4 58:15 |
| | | | **mycell** 55:22 |
| | **meaning** 61:16 | **monitor** 28:15 | **n** |
| **malpractice** 46:20,20 50:17 50:21 51:4 | **means** 12:11 49:22 | **month** 51:22 | **n** 3:1 5:1 70:1 |
| | | **monthly** 7:6 | **n.d.n.y.** 60:7,9 |
| | **meeting** 6:25 16:25 | **months** 62:10 | **name** 5:22 30:13 43:7 49:12 |
| **maltz** 40:10 | | **moot** 65:17 | |
| **managed** 61:17 | **member** 8:10 40:24 61:2 | **morning** 5:4,9 5:16 6:6 41:6 46:4 | |
| **management** 2:6 6:13 9:3 | | | **named** 11:22 11:25 42:14 |
| **managing** 61:2 | **membership** 65:4,11 | | |

| | | | |
|---|---|---|---|
| **nancy** 1:22 | **new** 1:2 3:6 4:4 | **o** | **office's** 13:25 |
| **nash** 4:13 5:12 | 4:11 18:18 | | **officer** 42:16 |
| **nature** 7:10 | 19:4,9,10,16 | **o** 1:21 5:1 70:1 | 42:18 |
| 11:1 12:15 | 21:16 39:21 | **oath** 16:2 | **oh** 7:12 19:7,13 |
| 34:6 38:10,10 | 52:8 67:4,8 | **object** 45:8,11 | 23:8 24:11 |
| 46:10 48:4 | **newly** 8:1 | 53:6 54:21,22 | 37:20 55:8 |
| **nazar** 4:6 6:7 | **newman** 4:8 | **objected** 6:19 | 67:24 |
| 13:14,23 30:2 | 5:12 | **objection** 8:12 | **okay** 5:6,7,18 |
| 45:1 47:11 | **nhl** 1:3 | 19:17 25:13,14 | 5:20,20 6:3,10 |
| 66:7 | **nice** 42:6 | 30:4,9 31:5 | 7:14,17 8:8 |
| **neat** 29:5 36:16 | **nics** 6:17 | 47:4 | 9:13,19 10:4,7 |
| **necessarily** | **night** 15:13,20 | **obligation** 41:1 | 10:13,17 11:4 |
| 26:2 32:25 | 15:20 | 64:8 | 11:10 12:15 |
| 33:5 40:11 | **nj** 3:13 | **obligations** | 13:11 14:12,16 |
| **necessary** | **nominal** 28:17 | 8:11 41:1 | 14:20 15:18,23 |
| 11:22,25 42:2 | **non** 11:13 60:6 | **observation** | 17:16 18:8 |
| **neck** 16:20 | 61:13 68:2 | 11:13,19 | 19:7,13 23:25 |
| **need** 25:19 | **nonsense** 47:5 | **obtaining** | 24:3 26:18 |
| 31:6 45:19 | 47:5,9 | 50:13 | 27:4 35:22 |
| 48:18,19,22 | **notation** 12:7 | **obviously** | 37:2,23 38:10 |
| 49:4,7 59:1 | **note** 15:20 | 11:14 18:22 | 38:19,22 39:8 |
| 62:14 66:20 | 22:25 23:12 | 29:15 | 39:24 40:3,4 |
| **needed** 6:23 | **noted** 52:10 | **occurred** 29:6 | 40:19,25 41:5 |
| 11:10 | **notes** 5:7 | **ocean** 8:16 | 41:24 42:4,14 |
| **needs** 59:4 | **notice** 15:14 | 21:4,9,15 | 42:15,20 43:8 |
| 65:20 | **noting** 60:9 | 50:10 51:1 | 45:3,6,11,12 |
| **negotiate** | **november** 1:15 | 53:25 54:8 | 45:15 46:3,6 |
| 54:25 | 6:20,24 14:6,8 | 55:1 56:17 | 46:25 47:9,24 |
| **negotiated** | 58:9 | **october** 16:4 | 48:5 51:13,14 |
| 20:22 | **nuance** 24:17 | 16:24 21:14 | 53:22 54:23 |
| **negotiations** | **number** 29:6 | 53:23 | 55:13,14,17 |
| 55:2 | **numerous** 36:3 | **offer** 36:6 | 57:14,24 62:9 |
| **network** 8:3 | **ny** 1:13 3:6,22 | **offers** 53:3 | 62:10 64:9 |
| **neutral** 30:24 | 4:4,11 70:23 | **office** 19:11 | 66:13 67:20 |
| **never** 20:2,3,6 | | 30:7 49:9,16 | 68:17 |
| 20:7 21:8,11 | | 49:17 67:3,5 | **old** 70:21 |
| 53:10 54:6,9 | | 67:19 68:9 | |

**once** 22:14
  56:12 60:24
  64:8
**one's** 49:2 65:7
**online** 8:7
**operate** 40:1
  43:18
**operated** 15:24
  29:3,4
**operating** 7:6
  14:8 16:5
  42:24 50:1
  61:13
**operations** 8:9
**opinion** 8:20
**opportunity**
  37:15 45:2,22
  49:9,10 56:11
  56:20,23 59:6
**opposed** 43:11
**opposition** 6:8
**options** 55:12
  56:15
**order** 6:20
  10:12 17:19,20
  17:22 18:1
  20:12,19 38:9
  43:8 44:1
  53:14 57:6
  63:1 66:17
  68:13
**ordinary** 40:22
**originally** 36:1
**outright** 17:18
  23:20
**overlap** 19:13

**overrule** 31:4
**overview** 23:22
**own** 17:25
  32:14
**owned** 7:18,19
**ownership**
  65:4
**owns** 17:18,18
  32:20 65:11

**p**

**p** 2:9 3:1,1,16
  3:24 5:1
**p.c.** 3:19
**pages** 32:9
**paid** 16:25
  23:19 34:1,4
  43:11 45:13
  54:7
**pain** 16:6,20
**paint** 13:10
  37:14 39:2,3,9
  41:22 46:1
**panel** 43:17
**paper** 8:1
**papers** 14:25
  15:10 16:3
  17:5 27:12
  65:2
**par** 48:1
**paragraph**
  59:22
**pari** 12:24
**part** 8:11,15
  19:25 33:5
  35:11 36:23
  38:9

**particular**
  40:12
**particularly**
  69:1
**parties** 25:11
  35:11 40:8
**party** 11:15,22
  11:25 12:3,21
  13:7 27:22
  28:17 31:20
  33:5 45:7,8,8
  45:15 47:19
  59:23
**pass** 20:19
**passed** 20:18
  50:16
**passu** 12:24
**past** 63:9
**pay** 18:2 25:20
  25:20 26:8
  34:5,15 43:6,7
  43:8,10
**paying** 18:6
  43:4
**payment** 30:15
**pending** 9:1
  27:2
**penner** 2:10
  3:20 4:9,18
  5:11,11 9:6
  15:4 23:24
  24:5 35:1,2
  45:10 58:5
**penners** 2:8
**people** 6:2,3
  40:13 46:4,19
  58:1

**percent** 32:20
  48:3
**percentages**
  65:9
**perfect** 61:18
**perfected**
  25:16
**period** 7:7
**permit** 66:12
  67:12
**person** 7:20,23
  19:17 20:18
  55:19,19 61:14
  67:17
**perspective**
  24:16 25:18
  30:19
**petition** 6:17
  10:11
**picture** 13:10
  37:15 39:2,3,9
  41:22 44:15
  46:1
**place** 10:17
  17:22 18:1
  53:4 63:15,21
  67:16
**placed** 16:23
  18:2 39:16
**places** 16:23
**plan** 41:16
  50:3
**plans** 49:22,24
**plaza** 1:12 3:21
**pleadings**
  26:14 36:20

pleasant  3:12
please  6:7
  54:14
plenty  46:11
plus  48:1
pm  69:9
point  17:25
  19:1 25:8 26:6
  26:16,21 32:21
  32:22,22 33:8
  35:6,7 42:23
  42:23 50:16
  51:11,13 58:6
  66:10,16,22
  67:10
points  24:12
  26:13 35:4
pools  40:5
positioned
  18:3
possession  2:3
  13:20 14:7
  33:1 56:8
possibilities
  63:22
possibility
  43:24 44:4
possible  44:1
  67:14
potential  21:3
  25:23 29:24
  32:1 33:17
  35:8 56:15
  67:4
potentially
  18:16 25:13,17
  28:7 30:18

31:22 35:18
  65:12 67:9
prefer  30:6,20
  35:21 36:5
preference
  36:20,22
preferences
  48:3 63:16
prepared  36:8
  37:25 49:10
  61:10
preparing  30:9
  69:4
prepetition
  52:12 55:4
preponderance
  27:7 48:23
  60:16
present  4:16
  27:9 38:1
  60:20
presentation
  32:6
presenting  5:3
preserve  53:14
presumably
  18:5 25:2,12
  28:12 29:23
  36:19 43:7,12
  61:14
pretrial  67:13
  68:2
pretzel  43:14
primarily
  52:17
principal
  15:24 21:24

23:3,8,15,18
  25:15,21 28:4
  28:10,11,23,24
  31:8,16,17
  32:2 33:19
  34:11,11 37:9
  40:19 41:15
  42:3 45:5
  50:19,20 52:2
  52:17,18 53:12
  61:18 63:3,3
  63:12 64:7
principal's
  32:2 33:19
principals  42:5
private  8:2
pro  52:23
probability
  22:23
probably  7:19
  28:9 35:11
  49:10 51:21
  54:8
problem  6:4
  40:19 41:10,14
  48:5,5,7
procedures
  20:12 22:1
proceed  24:24
  31:7
proceeded
  11:12
proceeding
  28:14 67:14
proceedings
  69:8 70:4

process  9:17
  13:6 20:9,22
  28:24 44:17
  45:12 46:23
  47:2 50:13
  56:19 68:21
professional
  52:9 53:3
  54:23
professionals
  43:10 44:7
progress  13:1
  13:3 32:15
promises  53:13
  55:14
promissory
  23:12
pronounce
  30:12
proof  13:12,20
  13:24 14:7,14
  14:17 45:8
property  17:8
  23:15 25:4
proposed  56:7
prosecute
  38:12 51:1,5
prosecuted
  28:12
prosecuting
  51:4
prospect  56:12
prove  23:13
  49:18
provided  21:11
provider  8:16
  21:4

providers 16:1
puerto 32:20
pulling 52:14
purchased 44:3
purport 54:2
purported 21:2 22:8
purpose 26:4 59:1
purposes 33:2
pursuant 16:23
pursue 44:1,1 51:17 56:21 63:21
pursued 58:23 63:14 64:4,4
pursuing 35:12 43:22,23
put 17:19,20 17:22 18:11 41:11,13 52:25 55:19 63:21
putting 6:21 61:14 69:3

**q**

quagmire 41:14
question 9:14 11:20 12:4 16:17 19:3,13 19:24 20:3 27:4 48:23 52:1 63:13 65:1

questioning 43:5,5,6,16 63:11
questions 26:17 44:10 52:20 64:7 65:12
quick 51:8
quite 6:14 20:9 39:17 43:15
quote 42:13

**r**

r 1:21 3:1 5:1 38:22,23 70:1
race 27:19 28:22 33:3 36:24 64:18
racing 10:18 31:24 32:23
raise 46:5
raised 24:1 32:8 54:18 65:1
rampage 54:21
rates 8:6
rather 24:15 28:21 31:24
read 9:12 14:24,25,25 17:6 59:20
reading 6:11 68:25
real 51:7 64:14
realistic 56:12
really 20:14 25:12 33:25 34:6 42:4

44:12 62:5,11
reason 8:13 11:20 12:8 24:13 26:12 38:5,19 39:12 56:24 62:21,24
reasonable 22:21,22 24:19 49:20
reasons 12:20 25:12 34:17 46:3
receive 7:24
received 13:19 13:24 67:3
receiving 30:14
recharacterize 45:6 46:25
recognized 62:6
record 14:6 41:23 44:15 50:8 70:4
recover 12:3 12:13
recoverable 38:21,24
recovered 12:19
recovers 43:12
reduce 46:24
reestablish 50:1
refer 26:14
referred 9:20 9:22 24:22 32:17

referring 25:9 66:19
regal 4:8 5:12
regard 16:18 38:17 47:3,4
regarding 66:9
regardless 12:17 21:13
regular 40:11
regulation 20:7
rehabilitation 24:19 49:20,22 56:12
reiterate 55:16
rejected 23:11 23:20
related 2:10 10:21 32:16 33:19
relied 8:6
remand 11:17 27:3
remanded 36:9
remember 45:7 47:24
remind 37:18
remove 10:11 11:8
removed 9:8 9:15,16,17,24 10:12 11:8,14 26:22 67:14
removing 10:14
reorganize 22:22 62:13

64:1

**repay** 25:15,20
26:9
**repayment**
23:10
**repeating**
24:15 26:15
**replacement**
52:7
**report** 7:6 14:9
53:24
**reports** 14:9
**represent** 31:4
31:5,6 33:12
**representation**
65:19,20,23
**representative**
31:25
**represented**
20:21 26:22
50:4,11
**request** 48:17
59:23 67:11
**required** 18:18
**requires** 41:25
**requiring** 9:25
13:17
**respect** 6:18,20
7:2 8:12,17,22
22:13 23:4
32:1 35:4
54:17 57:2
58:23 59:7
61:7
**respectfully**
26:14 66:23
67:11

**response** 16:17
**restore** 18:24
**restructuring**
42:16,17
**result** 21:9
**resurrect**
62:22
**retail** 42:18
**retain** 34:3
64:2
**retained** 66:3
66:20
**reten** 45:18
**retention** 6:8
6:18,18 14:23
25:14 30:9
31:3 47:8
56:20 66:24
67:15,18,19
**return** 17:14
27:5 52:11
**returnable**
6:19
**returns** 17:16
**revenues** 8:4,5
**review** 13:25
67:2
**reviewed** 15:9
**revivable**
19:14
**revive** 18:24
**rico** 32:20
**right** 6:1,10
9:21 10:9,13
11:16 13:25
18:7 23:1
31:17 32:12,12

37:3,5 39:21
40:25 42:22
46:9 47:1
50:24 55:19
58:12 59:15
**rights** 48:21
65:4,4
**ring** 31:13
**rita** 2:25 70:3,8
**road** 36:13
70:21
**rober** 9:5
**robert** 5:17,23
5:24 26:20
45:10
**rooted** 37:6
**rossan** 2:15 3:8
5:4,5 15:6,6,18
15:23 16:15
17:24 18:9
19:6,8,10,25
32:7,12 33:7
36:3 53:16
54:12,14,18
68:15,15,17
**rule** 45:23
**rulings** 36:3
**run** 18:19
19:17 46:20
50:21
**running** 16:11
18:19 31:20
57:25
**ruskin** 3:19
5:10 58:5
**rxr** 3:21

**s**

**s** 2:11 3:1 5:1
**s.d.n.y.** 60:23
61:3
**sadis** 3:3
**sake** 26:15
41:22
**salability**
12:17
**sale** 46:4
**saleable** 63:19
**sales** 40:14
**saurborn**
56:19
**saw** 7:11 16:3
58:1
**saying** 14:15
20:8 38:14
43:16 45:5,25
46:23 48:1
55:8 57:18
58:15,17
**says** 21:11 22:1
22:15
**scheduled** 6:25
**schedules** 6:15
6:17 38:22
**scheduling**
66:11 68:6
**se** 52:23
**second** 25:15
57:11 68:7
**section** 30:20
60:5,9 66:18
67:9
**secure** 9:2 62:2

**secured** 25:16
  44:18 58:24
**security** 8:15
  8:17 22:1
  27:22
**see** 5:20 13:25
  27:12,13 32:24
  33:22,23 45:16
  60:7 67:8
**seek** 11:8,16
**seeking** 27:3
**seem** 31:19
  58:18
**seemed** 11:4,7
**seems** 8:19
  14:22 25:2
  31:1 33:17
  38:18 42:6
  53:1
**seen** 13:24
  17:10 20:7
  21:8 42:8,9
  44:2 46:3,6
  47:24
**self** 36:17
**sell** 57:14,15
**selling** 23:3
**send** 14:18
**senior** 27:23
**sense** 14:23
  31:14 32:3
  33:23,25 34:10
  51:14 52:24
**sent** 14:2 25:11
**sentence** 8:5
**sentiments**
  16:14

**separate** 27:1
**separately**
  25:15
**september**
  6:16,25 7:7
  14:9
**serious** 49:19
**serve** 6:23
**service** 6:24
  8:16 16:1 21:4
**services** 18:19
**set** 7:18
**sets** 56:10
**setting** 6:21
**settlement**
  47:11 55:1
**severed** 11:10
  11:11
**shares** 12:23
**sheet** 25:11
**sherman** 2:9
  2:12,15 3:4 5:5
  5:7 9:4 15:3,7
  15:13 22:24
  32:15 45:9
**sherman's**
  23:22,23 24:12
  26:5,15 50:11
  53:17
**sheryl** 2:9 3:24
  5:9 24:4 34:25
  58:4
**shop** 59:8
**short** 10:12
  51:15
**showing** 20:24
  58:19 62:8

  64:12
**shown** 28:20
  50:1
**shut** 8:19 15:25
**sidelines** 55:8
**sides** 53:2
**sideways** 55:18
**sign** 45:15
**signature** 70:7
**significant**
  15:21 49:3
  50:19
**similar** 35:7
  57:14
**simple** 39:13
  55:20
**simply** 54:10
  56:13
**single** 40:24
  42:18 47:19
  64:14,15
**sit** 43:17 63:11
**sitting** 17:23
  18:12 55:7
**situation** 34:7
  36:16 41:14
**six** 21:17
**slightly** 24:17
**smell** 44:22
**sold** 20:25
**sole** 8:10
**solutions** 70:20
**somebody** 12:1
  18:10 43:15
  49:8 52:5,5
  63:19 68:14

**somewhat** 9:23
**sorry** 5:21 33:8
  51:8 56:4
  58:14,21
**sort** 26:3 28:22
**sound** 5:18,21
  6:3 34:2 36:23
  43:21 44:24
  64:5 65:6
**sounds** 28:5
  53:11
**southern** 9:23
**speak** 15:9
  28:8 45:2
  49:13 54:17
  57:1,4
**speaking** 6:4
  56:14
**special** 31:6
  40:9 43:7
  46:15 50:14
  55:3
**specializes**
  40:14
**specifically**
  22:16 27:10
**speculative**
  21:21 22:9
**spend** 28:16
  34:13
**standard** 40:9
**standing** 62:20
**start** 15:16
  49:18
**started** 8:9
  23:19

state 5:13
11:11 15:14
16:2 18:18
19:4,10,11,16
19:17,18 20:20
21:24 22:25
23:2,4,6,7,11
23:20 24:25
27:15 28:14
32:14 33:13
35:9 36:9,21
53:2,17
stated 30:10
statement 59:3
statements
14:10
states 1:1,11
4:1 59:21
stating 7:5
status 13:11
18:24,24
statute 21:17
50:17,21 51:1
57:8
statutes 46:20
stay 11:9 31:2
32:25 34:21
64:18
stockholder
31:18
stop 15:22
64:18
stopped 18:6
stops 27:19
34:19
store 17:20

stories 26:3
story 15:25
16:2 37:15
38:21 45:22,24
straighten 10:1
strauss 2:2
3:10 6:9 49:15
straw 22:4
street 4:3,10
stronger 15:16
strongly 23:7
61:20,21
stuck 9:23
stuff 7:13
11:24 33:21
sub 7:7
subject 8:12
19:20
submitting
68:13
subordination
65:12
subsection
59:23
successful
12:13
sudden 37:10
41:5 53:7
sued 32:15,16
32:16 48:3
53:2
suggest 66:9,23
suggested
68:21
suggesting
40:15,18

suing 12:1
suit 51:12
suite 3:5,12,21
70:22
summary 23:1
support 16:11
18:15
suppose 20:15
supposed
15:13 64:17
supreme 36:1
49:23
sure 12:23 16:3
42:6 51:8 54:1
55:18 58:14,24
58:25 59:16
surprised
20:14
survives 27:2
suspicious 53:1

t

t 70:1,1
tactic 25:2,2
38:7,15
tainted 40:23
47:8
take 18:7,10,25
23:9,15 24:6
29:14 33:22
37:21 38:25
41:12 44:7
48:7 61:10
taken 29:23
55:17
talk 51:4 59:2
talking 40:8,9
40:10,12 51:9

51:12
tangential 12:2
12:3,7
taub 60:17,17
60:18
tax 17:14,15
52:11 60:6
taylor 5:17,23
5:24 9:5 26:20
26:24 45:10
team 69:3,5
technically
12:19
tell 15:25 20:15
37:15 39:4
41:14 45:22
46:1 53:21
term 25:11
terminate 39:7
terms 15:12
25:11
testified 16:3
16:25 21:24
50:4
testify 22:4
testifying 23:8
testimony
37:18,21,21
tests 20:18
thank 5:14,15
14:11,21 24:5
24:11 27:3
30:1,25 34:25
35:23 37:23
59:6 66:7,14
68:21,25 69:2
69:3,5,6,7

| | | | |
|---|---|---|---|
| **theft** 48:25 | **thinking** 10:14 | **total** 31:10 | 30:2,6,16,20 |
| 49:1 | 10:15 | 50:23 53:3 | 33:2,10,14,22 |
| **theory** 11:4 | **thinks** 37:11 | **totality** 61:8 | 35:5 36:8,11 |
| **thing** 12:6 | **third** 13:6 | 64:13 | 37:7 43:11 |
| 21:23 22:14 | 27:23 45:15 | **touch** 40:13 | 44:3 45:19 |
| 27:15 32:24 | **thought** 16:10 | **track** 67:8 | 47:6,14,20 |
| 34:10 44:5 | 19:19 23:12 | **transactions** | 56:25 57:24 |
| 45:4,18 47:5 | 37:12 52:5 | 8:7 | 60:3 61:4,22 |
| 53:17 57:13 | 54:22 | **transcribed** | 63:18,21,22 |
| 58:13 | **thoughts** 34:23 | 2:25 | 64:4,21,24 |
| **things** 11:5 | **three** 25:23 | **transcript** 70:4 | 65:13,16 66:8 |
| 12:25 13:3 | 43:10 44:7 | **transfer** 7:21 | 67:2,16 68:8 |
| 14:12 15:22 | 62:9 | 33:18 50:6 | **trustee's** 25:14 |
| 16:9,10 19:15 | **time** 6:12 | 57:10 | 30:18 33:16 |
| 19:18 27:19 | 11:14 13:17 | **transferrable** | **trustees** 33:25 |
| 31:13,14 35:14 | 14:6,13 15:21 | 19:15,15,19,23 | 63:20 |
| 35:15 36:14 | 20:23 26:15 | 20:7,8 28:2,2 | **truth** 17:9 |
| 37:10 38:8,23 | 29:4 37:10 | 40:7 57:8,13 | **try** 22:11 30:12 |
| 40:11 51:9 | 38:14 48:12 | 57:19 | 31:20 |
| 55:4 58:7 59:2 | 66:15 68:3,11 | **transferred** | **trying** 9:24 |
| 62:14 64:17 | **timeframe** | 10:6,8 20:17 | 10:1 12:23 |
| **think** 5:19 7:19 | 10:10 | 20:25 26:2 | 17:7 40:13 |
| 11:21 12:4 | **times** 8:21 | 57:21 | 43:15 44:6 |
| 13:7 15:11 | **timing** 15:12 | **transferring** | 46:1,1 54:25 |
| 16:13,15 18:12 | 52:24 | 50:8,9 | 62:2,6,7,8 |
| 18:13,21,25 | **today** 5:3 6:5 | **trash** 18:11 | **tsang** 4:14 |
| 20:14 22:8 | 6:11,19 7:8 | **trial** 6:7 23:2 | **turn** 23:25 |
| 24:12,15 25:5 | 15:4 20:6 | **tried** 55:1 | 26:5 29:8 37:2 |
| 28:7 30:16 | 37:17 48:10 | **true** 7:22 14:13 | 54:17,17 |
| 31:17 33:10 | 59:3 | 16:2 31:13 | **tuttle** 5:17 15:4 |
| 35:3,17,19 | **together** 31:21 | 54:10,11 70:4 | **twinkie** 47:25 |
| 36:12,13,14 | **told** 20:2,3,6 | **trust** 33:20 | **two** 9:16,17 |
| 39:17 49:3 | 54:2 | 41:11 | 10:7,8,9 14:12 |
| 51:2 52:16,17 | **tons** 55:24 | **trustee** 4:2 6:8 | 14:16 17:1,10 |
| 59:13,14 66:10 | **took** 32:18 | 7:4 13:15,15 | 21:14 22:10 |
| 66:18,21 67:4 | 54:7 | 13:23 28:12,13 | 25:12 41:9 |
| 67:7,9 68:7 | | 29:14,16,20,21 | 52:3,9 62:9 |

64:14,15
**type** 16:23
  40:12,14 59:12
**types** 40:11
  42:5

**u**

**u.s.** 1:23 4:2
  6:8 7:4 13:15
  13:15,23 25:13
  30:2,6,16,18
  30:20 37:7
  47:20 66:8
  68:8
**ucc** 44:18,21
**ultimately**
  60:13
**unclear** 25:18
**under** 16:2
  27:6 30:20
  35:9,17 48:24
  57:8 59:24,25
  59:25 60:3,14
  60:21,24 66:18
  67:9
**understand**
  7:17 21:16
  27:18 28:19
  33:4 46:12
  52:19 55:13
  57:12
**understanding**
  17:17,25 18:4
  51:13 56:18
  57:2
**understood**
  13:9 14:18
  40:21 43:20

**unfortunately**
  7:13 33:24
  34:6
**uniondale** 3:22
**united** 1:1,11
  4:1
**unknown** 1:25
**unnecessarily**
  33:9
**unprofessional**
  58:18
**unsecured** 45:7
  46:25 58:24
**updated** 14:6
**uphill** 37:4
  55:16
**use** 7:23
**used** 19:4
  25:12 49:17
**user** 57:13,16
**ust** 30:4
**utmost** 55:17

**v**

**v** 9:4,5 60:17
**vague** 25:25
**valid** 24:12,19
  24:24 35:4
  66:21 67:10
**valuable** 12:10
  31:15 50:20
  57:5
**valuation**
  53:17,20 54:1
  54:6
**value** 17:9 26:7
  28:1,3 38:17
  39:14 51:2

53:23,25 61:6
  62:15,17 64:2
  64:10,11
**valued** 39:12
  56:18
**values** 12:18
**valuing** 53:19
**varick** 4:3
**various** 38:6
  43:8
**vending** 1:7
  2:4 9:3 49:16
**venue** 9:25
  10:4 36:2
**veritext** 70:20
**vetted** 20:11
**view** 19:18
  61:11,22
**vip** 7:2,3
**virtue** 50:23
  63:2

**w**

**wait** 24:8
**waiting** 21:19
  21:19
**wakes** 37:10
**walked** 18:5
  41:18 64:10
**walking** 61:25
**walks** 42:3
**wallet** 8:1,1
**want** 5:6 10:17
  10:18 12:16
  13:4,5 16:5,6
  16:19 22:3
  24:6 27:14,18
  28:19 30:24

33:5 34:9,13
  34:23 36:12,24
  39:2,5 40:17
  41:10,13,14
  43:25 45:9,17
  46:17 47:3,10
  49:9 51:8
  57:25 58:2,6
  58:11 62:10,11
  62:12,20 68:1
  68:3,19
**wanted** 7:20
  11:13,18 13:9
  23:10 24:7,9
  25:22 26:21
  49:9 51:12
  56:4 58:22
**wants** 26:18
  45:23 47:6
  63:19
**water** 42:3
**watkins** 20:21
**way** 20:25 22:5
  29:5 33:6
  36:15,16 37:22
  39:12,19 46:22
  47:7 53:4
  55:11 57:18
  68:8
**ways** 31:25
  41:8
**we've** 7:10 9:2
  13:2 20:2,2,3,6
  20:7 21:8
  37:17 42:5,7,9
  43:10 46:5
  47:24 54:25

55:5,5,7,18 57:12 63:9

**weigh** 65:22 67:3,5,17

**weltsch** 2:25 70:3,8

**wendy** 4:14

**went** 19:12

**west** 3:12

**whichever** 60:1

**wide** 27:7 60:12,19

**win** 21:22

**withdrawing** 8:23

**wives** 45:10

**woke** 41:6

**wondering** 31:24

**word** 43:1

**words** 20:10 29:16 31:14

**work** 19:4 46:16 56:25 68:7,23 69:4

**worked** 19:8 19:10 40:15,19 42:16 46:24 55:18 69:1

**working** 44:17 47:25 52:3 57:9 58:7

**works** 44:17 45:12 47:2

**world** 42:4 61:18

**worry** 41:18

**worse** 34:4 42:9

**worth** 43:22,23 53:20

**wrapping** 13:6

**written** 53:22

**wrote** 17:16

|  x  |
| --- |

**x** 1:4,10

|  y  |
| --- |

**yeah** 44:11 53:11 62:4 65:21

**year** 21:17 37:1

**years** 17:2,10 19:5,21 21:14 22:10 29:7 41:5,9 50:15 52:20 53:15 61:23

**yick** 5:17

**york** 1:2 3:6 4:4,11 18:18 19:4,9,10,16 21:16

|  z  |
| --- |

**zampella** 4:17 8:10 9:4,5,6 15:24 23:15,18 26:9 30:11,17 30:24 32:16,18 35:15 43:1 46:18 51:3,16 52:2 54:1,4

55:8 64:22

**zampella's** 53:2

**zoom** 5:12 63:19 68:10