# Exhibit C

# Zampella Declaration

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>COTTONWOOD VENDING LLC,<br><br>Debtor. | Case No. 23-43027-NHL<br><br>Chapter 7 |

### DECLARATION OF ANIELLO ZAMPELLA IN SUPPORT
### OF OBJECTION TO PROOF OF CLAIM NO. 5
### FILED BY ROBERT TAYLOR

I, Aniello Zampella, declare as follows under penalty of perjury:

1. I am over the age of 18 and am the founder and sole member of the debtor in the above-captioned case, Cottonwood Vending LLC ("Cottonwood" or the "Debtor"). As such, I am personally familiar with the facts set forth below and respectfully submit this declaration in support of my objection, dated November 22, 2024 (the "Objection"), for an order disallowing the proof of claim filed by Robert Taylor ("Taylor"), designated as Claim No. 5 on the Debtor's claims register (the "Claim").

2. The alleged basis for the Claim is "litigation dispute concerning Debtor's revenues." The Claim does not set forth any factual basis or supporting documentation to validate the asserted Claim. A true and correct copy of the Claim is attached here as **Exhibit 1**.

3. The litigation dispute referenced in the Claim is the case in the Supreme Court of the State of New York, New York County, Index No. 650845/2022, filed by Taylor against Cottonwood, me, Chad Russo, and Pierre Basmaji (the "State Court Complaint"). In that action, Taylor – who was recently convicted on seven felony counts for operating an underground, multimillion-dollar network of unlicensed Bitcoin ATMs marketed towards criminals and lying

on his tax returns[1] – claims that he is a one-third owner in a joint venture between Blue Tree[2] (an entity in which Taylor used to be a member) and Cottonwood, called "CoinBTM," which purportedly entitles Taylor to one-third of Cottonwood's profits. A true and correct copy of the State Court Complaint is attached here as **Exhibit 2**, and the relevant allegations are at ¶¶43-45, 72-74, 79.

4. Because Taylor's allegations are false – there was never a joint venture between Blue Tree and the Debtor, and Taylor is not entitled to any of the Debtor's profits – his Claim should be disallowed.

5. By way of background, I met Taylor in or around 2014 through a Meetup community of Bitcoin enthusiasts. At that time, Taylor operated several Bitcoin ATMs in New York City, and I traded Bitcoin.

6. In 2015, New York Department of Financial Services ("DFS") announced licensure requirements for all virtual currency business activities in New York (the "BitLicense"), which included operators of Bitcoin ATMs. The virtual currency regulation, 23 NYCRR Part 200 under the New York Financial Services Law, went into effect in June 2015. As a result, Taylor could no longer operate his Bitcoin ATMs without a license. Attached here as **Exhibit 3** is a PDF printout of the Introduction page on DFS's website, which reflects the contents of the following webpage as it appeared on October 19, 2024: https://www.dfs.ny.gov/virtual_currency_businesses.

7. In May 2015, I founded Cottonwood for the purpose of establishing a network of Bitcoin ATMs that was fully licensed and compliant with DFS's virtual currency regulation, to

---

[1] *D.A. Bragg Announces Trial Conviction in Citywide Illegal Bitcoin ATM Operation*, MANHATTAN DISTRICT ATTORNEY'S OFFICE (May 16, 2024), https://manhattanda.org/d-a-bragg-announces-trial-conviction-in-citywide-illegal-bitcoin-atm-operation/.

[2] Undefined capitalized terms have the meaning ascribed elsewhere in this Declaration.

capitalize on the opportunity to become one of the first licensed operators of Bitcoin ATMs in a tightly regulated industry.

8. When Taylor learned about Cottonwood and my intent to apply for a BitLicense, he sought to work together so that he could benefit from Cottonwood's regulatory and licensure compliance, and I agreed, seeing a business opportunity in working with someone who had experience operating and servicing Bitcoin ATMs.

9. To effectuate that plan, Taylor and I (through Aniello Zampella Family Trust), together with co-defendants Basmaji and Russo and nonparty Nathan Lyons formed Blue Tree Management, LLC ("Blue Tree"), which was organized under the laws of the State of New Mexico in August 2015. A true and correct copy of Blue Tree's Certificate of Organization is attached here as **Exhibit 4**.

10. Blue Tree's purpose was to act a service provider for Cottonwood's Bitcoin ATMs. *See* Blue Tree's Operating Agreement, attached here as **Exhibit 5**, at §1.5 on page 1.

11. Cottonwood owned the Bitcoin ATMs and the cash deposited into the machines, and Blue Tree was a party to the retail leases for the machine locations and performed cash management and customer service functions. Aniello Zampella Family Trust, Russo, and Taylor each made $88,000 capital contributions towards initial funding of Blue Tree.

12. Cottonwood applied for BitLicense in August 2015. A true and correct copy of Cottonwood's BitLicense application is attached here as **Exhibit 6**. Although Cottonwood did not receive its BitLicense until 2019, it was provisionally permitted to operate while its application was pending.

13. For almost a year, Blue Tree benefitted from its service agreement with Cottonwood, and Taylor, along with Russo and Lyons, was responsible for performing all cash management, location leases, and customer-facing services.

14. In 2016, the parties' relationship began to deteriorate when Taylor accused Russo, who was Blue Tree's member and manager at that time, of slacking off and not sufficiently prioritizing Blue Tree. As a result, on March 21, 2016, Russo was removed as Blue Tree's manager and employee, and Taylor remained Blue Tree's sole manager. A true and correct copy of Blue Tree's Member Resolution, removing Russo as manager, is attached here as **Exhibit 7**.

15. Russo was not, however, removed as a member because Blue Tree's Operating Agreement did not provide for a process to remove members, and Russo did not want to voluntarily withdraw.

16. Around the same time, I learned that, in the process of servicing Cottonwood's Bitcoin ATMs, Taylor routinely withdrew US dollar bills from the kiosks, which he would later replace with bills in different denominations. Although this did not affect the accounting of the funds, it demonstrated that Taylor was not acting in accordance with the strict requirements for cash handling and kiosk servicing that was of the utmost importance to Cottonwood, as a regulated entity. Blue Tree also learned from customer communications that Taylor misused his familiarity with Cottonwood's due diligence and know-your-customer (KYC) procedures to give customers suggestions on how to use Cottonwood's Bitcoin ATMs for illicit purposes without triggering security protocols, thus jeopardizing Cottonwood's BitLicense application and entire business, as well as exposing me and our business partners to criminal and civil liabilities.

17. As a result of the above-described wrongdoings, it became apparent that Cottonwood could no longer be associated with Blue Tree, and Blue Tree could no longer continue

to operate. Unfortunately, Blue Tree could only be dissolved by unanimous approval of members (*see* **Exhibit 5** at §9.1), and Taylor opposed the dissolution of Blue Tree.

18. Given the stalemate, on April 21, 2016, Russo, Basmaji, and Aniello Zampella Family Trust – together, comprising 60% of membership interests – resolved to remove Taylor as Blue Tree's manager and replace him with Basmaji. A true and correct copy of Blue Tree's Member Resolution, removing Taylor as manager and appointing Basmaji as manager, is attached here as **Exhibit 8**.

19. Basmaji then proposed that, to effectively unwind Blue Tree's operations, Blue Tree return all capital contributions to its members. A true and correct copy of the Agreements Regarding Return of Capital Contributions by Blue Tree in Exchange for Releases is attached here as **Exhibit 9**.

20. Cottonwood and Blue Tree severed their relationship. While Russo and Aniello Zampella Family Trust signed their respective agreements regarding return of capital contributions and were paid back, Taylor never did, presumably because he wanted to retain the ability to argue that, via Blue Tree's service agreement with Cottonwood, he could operate his own unlicensed Bitcoin ATM kiosks in New York, which he began doing immediately after Blue Tree ceased operations.

21. After the termination of Blue Tree's services to Cottonwood and the severing of their relationship, in retaliation, Taylor stole one of Cottonwood's Bitcoin ATMs, a cash counting machine, and several kiosk parts.

22. In June 2016, via his then-counsel Bukh Law Firm, PLLC, Taylor also made a false "Criminal Report Concerning Fraudulent Activities" to the United States Attorney's Office, Southern District of New York, making substantially the same accusations against me as he does

in the State Court Complaint. The USAO has not filed any charges against me, Cottonwood, Blue Tree, or anyone associated with them.

23. Taylor then proceeded to operate his own illegal network of Bitcoin ATMs in New York City, directly competing with Cottonwood and offering his clients a clandestine way to transmit illicit funds without requiring identifying information, unlike Cottonwood.

24. Taylor ran his network of Bitcoin ATMs without a license and was ultimately arrested and convicted for operating as an unlicensed money transmitter, criminal tax fraud, and filing false tax returns, knowingly facilitating "tens of thousands of instances of identity theft and grand larceny through his network of clandestine, unlicensed bitcoin kiosks." Attached here as **Exhibit 10** is Memorandum in Support of the People's Sentencing Recommendations in *People v. Taylor*, dated July 3, 2024.

25. During trial, Taylor – who appeared *pro se* – made a number of false and absurd statements, including, but not limited to, claiming to be the inventor of Bitcoin Satoshi Nakamoto. *See* **Exhibit 11**, a true and correct copy of the transcript of Summations in *People v. Taylor* (May 14, 2024) at 1260:20-21.

26. Taylor also claimed that he was a partner in "the second company to be issued the [BitLicense] for the activity of Bitcoin kiosk operations [and] the 14th company to ever hold [BitLicense] since the State of New York created that license," *i.e.*, Cottonwood, which is false and contrary to Taylor's allegations in his complaint against me. *See* **Exhibit 12**, a true and correct copy of the transcript of opening statements in *People v. Taylor* (April 30, 2024) at 45:1-6.

27. On February 22, 2022, Taylor filed the State Court Complaint against me and other Blue Tree members, individually and derivatively on behalf of Blue Tree, alleging that he is a one-

third owner in a joint venture between Blue Tree and Cottonwood, called "CoinBTM," which entitled him to one-third of Cottonwood's profits. *See* **Ex. 2** (Complaint) at ¶¶43-45, 72-74, 79.

28. Taylor filed this lawsuit after his Bitcoin ATMs were seized by authorities and only days before his indictment. A true and correct copy of the Grand Jury Indictment in *People v. Taylor*, filed on February 25, 2022, is attached here as **Exhibit 13**.

29. Given the timing of the lawsuit, it is likely that Taylor filed it to bolster his defense in the criminal case that his Bitcoin ATM business was properly licensed by virtue of having a relationship with Cottonwood via "CoinBTM." *See* **Ex. 12** (*People v. Taylor* Trial Tr.) at 46:15-19 ("I had the blanket of protection of the Bitcoin License from the State of New York"); 48:6-8 ("The evidence will show that the Prosecution had a duty to inform the Judges who signed off on the warrants about the Bitcoin-licensed entity known as CoinBTM.").

30. Taylor has not presented evidence of that defense in the criminal case.

31. In any case, "CoinBTM" is not a real entity; there are no formation documents nor any records of anyone ever discussing it, or any purported agreement between "CoinBTM" and Cottonwood for a share of the profits.

32. CoinBTM is an internet domain used by Cottonwood for its email addresses.

33. Taylor's sole record that purports to support his allegations in the State Court Complaint is the following e-mail from Pierre Basmaji on August 12, 2015:

> On my law license, I promise to you that we are working out the details to facilitate your partnership in the BTM business . . . . I hope to have the corporate structure finalized and formed by the end of the week that all three of you are a part of.

**Ex. 2** (Complaint) at ¶14.

34. This e-mail clearly refers to Basmaji's finalizing of the corporate structure of the entity that would become Blue Tree Management (for which BTM is an abbreviation), which was,

in fact, formalized less than a week later, as Basmaji had promised. Blue Tree's Certificate of Organization was filed on August 18, 2015. *See* **Ex. 4** (Blue Tree's Certificate of Organization, dated Aug. 18, 2015).

35. What Taylor refers to as "CoinBTM" is, perhaps, an informal service agreement between Cottonwood and Blue Tree, whereby Blue Tree performed cash management, location leases, and customer-facing services for Cottonwood, but that relationship – and all attendant obligations – was terminated in April 2016, when it became apparent that Taylor had been engaging in illegal activity that put Cottonwood, me, and our business partners at risk.

36. None of Blue Tree's members have ever received any share of Cottonwood's profits, and only Taylor has ever claimed any entitlement thereto.

37. Upon review and analysis of Taylor's Claim, it is clear that Taylor has not provided any factual basis or supporting documentation for his Claim. Further, the allegations in the State Court Complaint likewise fail to validate Taylor's alleged entitlement to any share of the Debtor's revenues.

38. Allowing Taylor's Claim to proceed without Taylor's demonstration of his entitlement to any of the Debtor's revenues could result in Taylor receiving an improper or excessive recovery from the Debtor's estate, to the detriment of other creditors. Accordingly, I believe that the Court should grant the relief requested in the Objection.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 22, 2024                                     Respectfully submitted,

                                                            _____
                                                            Aniello Zampella