Avery Samet
Jeffrey Chubak
Amini LLC
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
asamet@aminillc.com
jchubak@aminillc.com
- and -
Gregory O. Tuttle
Alex Banzhaf
Alexa DePierro
Tuttle Yick LLP
352 Seventh Avenue
14th Floor
New York, NY 10001
(646) 833-0300
gtuttle@tuttleyick.com
abanzhaf@tuttleyick.com
adepierro@tuttleyick.com
Attorneys for Creditor Robert Taylor

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| In re: | Case No. 23-43027-nhl |
|---|---|
| COTTONWOOD VENDING LLC, | Chapter 7 |
| Debtor. | ECF #99 |

**RESPONSE OF CREDITOR ROBERT TAYLOR TO EQUITY SECURITY HOLDER ANIELLO ZAMPELLA'S OBJECTION TO CLAIM #5 AND CROSS-MOTION TO ABSTAIN FROM HEARING CLAIM OBJECTION AND FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT RESOLUTION OF UNDERLYING LITIGATION ON WHICH THE CLAIM IS BASED IN STATE COURT**

# TABLE OF CONTENTS

                                                         **Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 1

ARGUMENT ........................................................................................................................... 5

I.      THIS COURT SHOULD ABSTAIN FROM HEARING THE CONTESTED MATTER COMMENCED BY THE CLAIM OBJECTION ................................................................ 5

      A.      Permissive Abstention under 28 U.S.C. § 1334(c)(1) is Warranted for the Same Reasons Equitable Remand was Previously Directed ............................................. 6

      B.      Abstention is Mandatory under 28 U.S.C. § 1334(c)(2) ......................................... 5

II.     STAY RELIEF SHOULD BE GRANTED SO THE UNDERLYING LITIGATION ON WHICH THE SUBJECT CLAIM IS BASED CAN BE ADJUDICATED IN STATE COURT ............................................................................................................................ 7

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A.M. Made Tires*,
 2016 WL 3448395 (Bankr. E.D.N.Y. June 14, 2016) ............................................................. 9

*Burger Boys, Inc. v. South St. Seaport Ltd. P'ship (In re Burger Boys, Inc.)*,
 183 B.R. 682 (S.D.N.Y. 1994) ............................................................................... 8, 9, 10, 11

*Certain Underwriters at Lloyd's, London v. ABB Lummus Glob., Inc.*,
 2004 WL 224505 (S.D.N.Y. Feb. 5, 2004) ............................................................................ 6

*City of Amsterdam v. Daniel Goldreyer, Ltd.*,
 882 F. Supp. 1273 (E.D.N.Y. 1995) ....................................................................................... 3

*Crown Heights Jewish Community Council, Inc. v. Fischer (In re Fischer)*,
 202 B.R. 341 (E.D.N.Y. 1996) ............................................................................................. 10

*In re Cuyahoga Equip. Corp.*,
 980 F.2d 110 (2d Cir. 1992) ................................................................................................... 7

*In re David X. Manners Co. Inc.*,
 2018 WL 1997674 (Bankr. D. Conn. Apr. 26, 2018) ............................................................. 9

*In re Keene Corp.*,
 171 B.R. 180 (Bankr. S.D.N.Y. 1994) ................................................................................. 10

*Matter of Kossoff PLLC*,
 2023 WL 3361053 (Bankr. S.D.N.Y. May 10, 2023) ...................................................... 9, 10

*In re Montague Pipeline Technologies Corp.*,
 209 B.R. 295 (Bankr. E.D.N.Y. 1997) ................................................................................. 10

*Panthers Capital, LLC v. Jar 259 Food Corp.*,
 2023 WL 4823942 (E.D.N.Y. Mar. 6, 2023) .......................................................................... 6

*In re Project Orange Assocs., LLC*,
 432 B.R. 89 (Bankr. S.D.N.Y. 2010) ................................................................................ 8, 10

*In re Sonnax Indus., Inc.*,
 907 F.2d 1280 (2d Cir. 1990) ............................................................................................. 8, 9

*In re Touloumis*,
 170 B.R. 825 (Bankr. S.D.N.Y. 1994) ................................................................................... 9

*In re Turner*,
    724 F.2d 338 (2d Cir. 1983) ............................................................................................ 7

*In re WorldCom, Inc. Sec. Litig.*,
    293 B.R. 308 (S.D.N.Y. 2003) ........................................................................................ 6

*In re Weinstein*,
    234 B.R. 862 (Bankr. E.D.N.Y. 1999) .......................................................................... 11

**Statutes and Rules**

11 U.S.C. § 362 .................................................................................................................... 1, 7, 8

28 U.S.C. § 1334 ........................................................................................................ 1, 5, 6, 7, 11

28 U.S.C. § 1452 ................................................................................................................ 2, 4, 6

CPLR 3018 ................................................................................................................................. 3

Fed. R. Civ. P. 8 ......................................................................................................................... 3

Fed. R. Bankr. P. 9027 ........................................................................................................... 2, 4

Fed. R. Evid. 201 ....................................................................................................................... 3

**Other Authorities**

David Gray Carlson, "Critique of Money Judgment (Part Two: Liens on New York Personal
    Property)", 83 St. John's L. Rev. 43 (Winter 2009) ............................................................. 10

Creditor Robert Taylor ("Taylor") hereby responds to the objection (ECF [#99](#) "Objection") of Aniello Zampella ("Zampella"), the owner (ECF [#3](#)) of debtor Cottonwood Vending LLC ("Debtor"), to [Claim #5](#), an unliquidated claim based on Taylor's prepetition state court action against inter alia the Debtor and Zampella, and cross-moves to abstain from hearing the [Objection](#) pursuant to 28 U.S.C. § 1334(c)(1) and (c)(2) and for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to permit resolution of the underlying litigation on which the claim is based in state court, and states:

## INTRODUCTION

1. This case was filed a year-and-a-half after the underlying state court action was commenced, and [Claim #5](#) is based on claims Taylor asserted against the Debtor in said action. Zampella's [Objection](#) is based on his declaration in support (ECF [#99-3](#)), a summary judgment-style declaration to which he attaches thirteen exhibits. The material allegations in the declaration are hotly contested. As the first scheduled hearing in this contested matter is not an evidentiary one ([E.D.N.Y. LBR 9014-2](#)), this response does not address the substance of Zampella's declaration, but rather explains why this Court should abstain from hearing this contested matter and instead grant stay relief so that the state court action can proceed, thereby enabling liquidation of the subject claim by the court that presided over pretrial proceedings prepetition. Should abstention and/or stay relief be denied, Taylor asks that this Court fix a time for him to file a brief and declaration in opposition to the Zampella one and schedule an evidentiary hearing.

## BACKGROUND

2. In February 2022 (prepetition), Taylor commenced the state court action, on behalf of himself individually and Blue Tree Management LLC ("Blue Tree") derivatively, against Zampella, Chad Russo ("Russo"), Pierre Basmaji ("Basmaji") and the Debtor. The complaint is attached to the [Objection](#) at ECF [#99-5](#) ("Complaint").

3. In his Memorandum and Order directing equitable remand of the subject action pursuant to 28 U.S.C. § 1452(b) (S.D.N.Y. Case 23-cv-8409 ECF [#9](#9), "Remand Order"), following its removal pursuant to FRBP 9027, District Judge Liman summarized the claims asserted as follows:

> Plaintiff [Taylor] start[ed] a business that sets up digital kiosks called "BTMs" that serve as automated teller machines for Bitcoin, where customers can buy or sell the virtual currency Bitcoin for cash at physical locations in New York City, including grocery stores and bodegas. Dkt. No. 1-2 ¶ 31 … In early 2015, after he received notice from the New York Department of Financial Services ("DFS") that a license ("BitLicense") was required to operate a business of receiving or transmitting virtual currency (including BTMs), Taylor was introduced to Zampella who had already started the process of obtaining a BitLicense through his wholly-owned company Defendant Cottonwood Vending LLC ("Cottonwood"). Id. ¶¶ 33, 35, 37. Plaintiff, Zampella and Russo agreed for form a joint venture called CoinBTM to set up licensed BTMs in New York and elsewhere. Id. ¶ 38. Although the three agreed to be equal 1/3 partners in CoinBTM, Zampella and Russo, along with co-defendant Pierre Basmaji (CoinBTM's attorney), persuaded Plaintiff to agree to a two-tier structure in which Zampella would remain the sole owner of Cottonwood, the applicant for the BitLicense; Plaintiff and Russo would each have 37% interests in a new company named Blue Tree that would be set up as CoinBTM's exclusive management company; and the profit share of CoinBTM would be achieved by funneling 10% of the joint venture's profits to Cottonwood and the remaining 90% to Blue Tree. Id. ¶¶ 39–44. Thereafter, in reliance on Defendants' representations that the arrangement would be formalized through written documents, Plaintiff invested $88,000 in CoinBTM, assigned valuable placement agreements and leases to the joint venture, removed his active BTMs and replaced them with new jointly-purchased BTMs, scouted new locations, secured new placement agreements and leases, and personally installed new BTMs for the joint venture. Id. ¶¶ 48-51. He also developed new strategies to grow the business and acted as the joint venture's sole customer facing technical representative, lead on-site technician for BTM malfunctions, and lead marketing officer. Id. ¶ 52.
>
> But the documents never came and the partnership began to fracture in late 2015 and early 2016. Plaintiff learned that Russo was a convicted felon. Id. ¶ 55. In March 2016, Zampella and Plaintiff agreed to eject Russo as manager of Blue Tree, leaving Plaintiff as its sole manager. Id. ¶ 58. In April 2016, Defendants made their move to push Plaintiff out of CoinBTM. Id. ¶ 59. Zampella and Basmaji told Plaintiff that (i) he was not entitled to any of CoinBTM's profits as these would all go to Cottonwood, and (ii) Blue Tree had no value. Id. ¶ 61. On April 21, 2016, Zampella, Russo, and Basmaji purported to remove Plaintiff as manager of Blue Tree and to install Basmaji as manager. Id. ¶ 62. Cottonwood then severed its relationship with Blue Tree. Id. ¶ 63. Although Cottonwood (doing business as

> CoinBTM) obtained its BitLicense in January 2019 and has grown into the largest BTM network in New York, generating profits in excess of $100 million, it has paid nothing to Plaintiff. Id. ¶¶ 65–68.
>
> On February 22, 2022, Plaintiff filed this action in New York State Supreme Court, New York County, on behalf of both himself individually and Blue Tree derivatively. The complaint alleges claims individually on behalf of Taylor and derivatively on behalf of Blue Tree for breach of contract for failure to honor the oral joint venture agreement. Id. ¶¶ 72-82. Plaintiff also asserts claims for: unjust enrichment against Zampella, Russo, and Cottonwood, id. ¶¶ 83-88; fraud against Zampella, Russo, and Basmaji, id. ¶¶ 89-94; breach of fiduciary duty against Zampella and Russo, id. ¶¶ 95-98; and an accounting against all Defendants, id. ¶¶ 99-101.

([Remand Order](#) at 1-3.)

4. The state court denied Basmaji's motion to dismiss. (NYSCEF[1] [#26](#) at 17:5-18:21.)

5. Each defendant other than Russo answered. (NYSCEF [#19](#) (Basmaji) [#29](#) (Zampella, Debtor, Blue Tree.) Neither answer denied the [Complaint's](#) allegations (¶¶29-30) that defendants have New York citizenship, which is an admission that they do whether under CPLR 3018(a) or FRCP 8(b)(6). Given this, and allegations/admissions as to Taylor's New York citizenship (¶28), diversity jurisdiction is unavailable.

6. The state court fixed a discovery end date in August 2023. (NYSCEF [#45](#), "Compliance Conference Order").

7. In addition, initial counsel for Zampella and the Debtor withdrew (NYSCEF [#106](#)), because of a dispute over the scope of its engagement (NYSCEF [#100](#) ¶8). On August 8, 2023, following said counsel's withdrawal, substitute counsel appeared (NYSCEF [#126](#)) only to notify

---

[1] New York State Court Electronic Filing (NYSCEF) citations herein are to the docket of the underlying state court action, assigned Sup. Ct. N.Y. Co. Index 650845/2022. For convenience hyperlinks are included. It is well established that this Court may take judicial notice of documents filed in the state court action. *E.g. City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1278-79 (E.D.N.Y. 1995) ("Under this standard [FRE 201], this Court is required to take judicial notice of the pending state court action").

the state court two weeks later (NYSCEF #130) of the commencement of the Debtor's bankruptcy case.

8. Postpetition, the Debtor removed the state court action (NYSCEF #131) pursuant to FRBP 9027.

9. The state court disposed (NYSCEF #142) of two discovery motions on that basis: a motion to vacate, renew and/or reargue (NYSCEF #77) Compliance Conference Order ¶2 stating defendants waived their right to depose plaintiff and Basmaji's motion to compel (NYSCEF #84) production of documents.

10. In November 2023, this case was converted to one under Chapter 7 (ECF #47) and Richard J. McCord was appointed as trustee.

11. Taylor filed Claim #5 in January 2024. Item #8 describes the "basis of the claim" as "Litigation dispute concerning debtor's revenues." The electronic claims register includes as a "Filer Comment: Unliquidated litigation claim."

12. In February 2024, the District Court remanded on equitable grounds under 28 U.S.C. § 1452(b). (Remand Order at 7-8.)

13. In April 2024, the District Court denied (S.D.N.Y. Case 23-cv-8409 ECF #19) Zampella's motion to vacate the Remand Order.

14. The Objection seeks to disallow Claim #5:

> because the allegations in Taylor's lawsuit against the Debtor are false – there was never a joint venture between Blue Tree and the Debtor, and Taylor is not entitled to any of the Debtor's profits or revenues – and Taylor has not provided any supporting documentation to sufficiently validate the asserted Claim …
>
> there was never a joint venture between Cottonwood and Blue Tree, the entity in which Taylor was a member, that entitled Blue Tree or Taylor to any share of Cottonwood's profits. Moreover, Cottonwood's termination of its relationship with Blue Tree was a result of Taylor's illegal conduct that exposed Cottonwood to criminal and civil liability, not unlike what Taylor currently faces from operating his own network of unlicensed Bitcoin ATMs marketed to criminals.

4

([Objection](Objection) ¶¶8, 16.)

15. In support, Zampella simply relies on his own declaration. (ECF [#99-3](#99-3).)

16. Resolution of this claim objection will require an evidentiary hearing, which pursuant to [E.D.N.Y. LBR 9014-2](E.D.N.Y. LBR 9014-2) will not be the initial hearing on the [Objection](Objection).

17. On November 8, 2024, the state court restored the action to its calendar, stayed the action both as against the Debtor and the nondebtor defendants "due to the pending bankruptcy proceeding involving [Debtor]", and invited Taylor to "seek permission from the bankruptcy court to proceed in this court." (Sup. Ct. N.Y. Co. Index 650845/2022 NYSCEF [#145](#145).)

**ARGUMENT**

18. This Court should abstain from hearing the contested matter commenced by the [Objection](Objection), both under 28 U.S.C. §§ 1334(c)(1) (consistent with the [Remand Order](Remand Order)) and (c)(2) (mandatory abstention); and stay relief should be granted, so that the underlying litigation can be adjudicated in state court where it was commenced a year-and-a-half before the Debtor's bankruptcy case commenced.

**I.     THIS COURT SHOULD ABSTAIN FROM HEARING THE CONTESTED MATTER COMMENCED BY THE CLAIM OBJECTION**

   **A.     Permissive Abstention under 28 U.S.C. § 1334(c)(1) is Warranted for the Same Reasons Equitable Remand was Previously Directed**

19. 28 U.S.C. § 1334(c)(1) provides "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

20. Courts consider the following factors in determining whether to permissibly abstain under § 1334(c)(1):

> (1) the effect or lack thereof on the efficient administration of the [bankruptcy] estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on the Court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*Osuji v. HSBC Bank, N.A.*, 580 B.R. 605, 612 (E.D.N.Y. 2018).

21. These factors "overlap significantly" with the equitable remand analysis under 28 U.S.C. § 1452(b). *Panthers Capital, LLC v. Jar 259 Food Corp.*, 2023 WL 4823942, at *3 (E.D.N.Y. Mar. 6, 2023). Indeed, "[t]he equitable remand analysis … is essentially the same as the Section 1334(c)(1) abstention analysis." *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 344 (S.D.N.Y. 2003); *see also Certain Underwriters at Lloyd's, London v. ABB Lummus Glob., Inc.*, 2004 WL 224505, at *8 (S.D.N.Y. Feb. 5, 2004) ("the factors for equitable remand are virtually identical to the factors for discretionary abstention pursuant to § 1334(c)(1)").

22. The District Court having previously equitably remanded the subject litigation pursuant to 28 U.S.C. § 1452(b) (see Remand Order), this Court should grant relief under 28 U.S.C. § 1334(c)(1) and abstain from hearing the Objection.

**B. Abstention is Mandatory under 28 U.S.C. § 1334(c)(2)**

23. 28 U.S.C. § 1334(c)(2) provides "[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court in the United States absent jurisdiction under this section, the

district court shall abstain from hearing such proceeding if the action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

24. The Complaint in the underlying litigation asserts only state law claims.

25. None are core claims, under 28 U.S.C. § 157(b)(2); indeed, bankruptcy is not even mentioned.

26. And the claims against the Debtor (first and second claims for breach of contract) are of course "related to a case under title 11", because a determination of liability (allowance) would naturally affect the debtor's estate, and assets available for distribution to respective creditors. *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (quoting *In re Turner*, 724 F.2d 338, 340-41 (2d Cir. 1983)) (proceeding is "related to" if its outcome "might have any 'conceivable effect' on the bankruptcy estate" or has "any significant connection with the bankruptcy estate").

27. The subject action could not have been commenced in a Federal court absent bankruptcy, because no federal question is presented, and as noted above the defendants either admitted or are deemed to admit that all parties reside in, do business and/or have their principal office in New York.

28. Abstention is therefore mandatory given that all elements of 28 U.S.C. § 1334(c)(2) have been satisfied.

**II.  STAY RELIEF SHOULD BE GRANTED SO THE UNDERLYING LITIGATION ON WHICH THE SUBJECT CLAIM IS BASED CAN BE ADJUDICATED IN STATE COURT**

29. A finding that abstention applies to the underlying state court action does not automatically result in stay relief. 28 U.S.C. § 1334(d) ("Subsection (c) … shall not be construed to limit the applicability of the stay provided by section 362 … as such section applies to an action

affecting property of the estate in bankruptcy"). However, 11 U.S.C. § 362(d) permits this Court to order stay relief "for cause."

30. "Once the moving party establishes a prima facie case for 'cause,' the burden shifts to the debtor [or other person opposing stay relief] to disprove its existence. *In re Project Orange Assocs., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (citing *Burger Boys, Inc. v. South St. Seaport Ltd. P'ship (In re Burger Boys, Inc.)*, 183 B.R. 682, 687 (S.D.N.Y. 1994) (citing 11 U.S.C. § 362(g)(1)).

31. "'Cause' is an intentionally broad and flexible concept which must be determined on a case-by-case basis." *Id*.

32. "Still, the legislative history of 362 reveals that Congress intended 'that one of the factors to consider when determining whether to modify the stay is whether doing so would permit pending litigation involving the debtor to continue in a nonbankruptcy forum,' as '[i]t will often be more appropriate to permit proceedings to continue in their place of origin, where no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere." *Id*. (citing H.R. Rep. No. 95-595, at 341 (1977), U.S. Code Cong. & Admin. News 1978, at 5963, 6297; S.Rep. No. 95-989, at 50 (1978), U.S. Code Cong. & Admin. News 1978, at 5787, 5836).

33. In determining whether to grant stay relief, courts in this Circuit generally consider the so called *Sonnax* factors,[2] or alternatively "engage in fact-intensive inquiries which appear to

---

[2] The twelve factors "are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8)

be loosely based on the *Sonnax* factors, mainly attempting to maintain the prepetition *status quo ante* between the parties." *Id.*.

34. Not all *Sonnax* factors are relevant in every case. *Burger Boys*, 183 B.R. at 688 (citing *In re Helen Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994)).

35. The applicable *Sonnax* factors weigh in favor of stay relief:

- As to the first, Claim #5 asserts only a claim for damages based on claims asserted in the state court action. Thus, stay relief would necessarily result in complete resolution of the issues presented.

- As to the second, stay relief would not interfere with this case. "Rather, the opposite appears more likely, where the progress of this case appears dependent upon and requires the resolution of issues currently awaiting judgment in the state court". *In re David X. Manners Co. Inc.*, 2018 WL 1997674, at *6 (Bankr. D. Conn. Apr. 26, 2018).

- As to the third, the Complaint asserts a fiduciary duty claim only against nondebtors.

- As to the sixth, the Complaint asserts five claims against three parties, aside from the Debtor and nominal defendant, including two claims which are not even asserted against the Debtor (for fraud and breach of fiduciary duty). As the state court stayed the entire action, stay relief is needed for those claims to be prosecuted.

- As to the seventh (and twelfth), the District Court previously held "allowing this action to proceed in bankruptcy court would prejudice Plaintiff [Taylor] by requiring him to retain bankruptcy lawyers, incurring expenses that should be entirely unnecessary in what is otherwise a purely state-law, state-court case" and that defendants "are not likely to be prejudiced by being required to litigate in state court." (Remand Order, citing *In re A.M. Made Tires*, 2016 WL 3448395, at *13 (Bankr. E.D.N.Y. June 14, 2016).) That this Court is apparently the preferred forum of one or more defendants is insufficient to move the needle. *Matter of Kossoff PLLC*, 2023 WL 3361053, at *8 (Bankr. S.D.N.Y. May 10, 2023) ("although lifting the stay will require the Trustee to

---

whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

9

litigate insurance coverage issues at a time and place the Trustee does not favor, Continental has … established cause to lift the automatic stay …"); *Burger Boys*, 183 B.R. at 688 (citing *In re Keene Corp.*, 171 B.R. 180, 185 (Bankr. S.D.N.Y. 1994)) (potential "increased costs of litigating in a particular forum are not so prejudicial as to require continuance of a stay").

- As to the ninth, a judgment in favor of Taylor in the state court action would not result in a judicial lien on estate property. Under New York law, a money judgment only results in a judicial lien on real property (CPLR 5203(a)), not personal property (*see generally* David Gray Carlson, "Critique of Money Judgment (Part Two: Liens on New York Personal Property)", 83 St. John's L. Rev. 43 (Winter 2009)), and no real property has been scheduled (ECF [#22](#22)) by the Debtor.

- As to the tenth, judicial economy militates in favor of stay relief, as it will permit efficient resolution of Taylor's claims and promote a cost-effective and timely resolution of the same. As in *Kossoff*, 2023 WL 3361053, at *8 "the present situation aligns with the rationale of *In re Project Orange Assoc.* and the legislative history that decision quotes … Continental [creditor] has commenced a proceeding elsewhere that can generate necessary certainty as to the Estate's and Continental's obligations and entitlements. No 'great prejudice' will result from allowing a unified adjudication in District Court, and, indeed, the Estate may benefit as a result."

- As to the eleventh, the state court presided over motion practice and discovery for a year-and-a-half before the Debtor commenced this case and removed the action. Thus, pretrial proceedings in the state court action are at a far more advanced stage than in this Court.

36. Courts regularly grant stay relief under these circumstances. *Project Orange*, 432 B.R. at 95-96 (granting stay relief to litigate state court actions that had been pending for around a year-and-a-half as of the petition date in which the parties had engaged in substantial discovery); *In re Montague Pipeline Technologies Corp.*, 209 B.R. 295, 305-07 (Bankr. E.D.N.Y. 1997) (granting motion to remand action to confirm arbitration award to state court, and granting stay relief to allow the confirmation action to continue); *Crown Heights Jewish Community Council, Inc. v. Fischer (In re Fischer)*, 202 B.R. 341, 355 (E.D.N.Y. 1996) (lifting stay because "the Civil RICO Action has been pending in the Eastern District of New York for more than four years, discovery is nearing its completion and the Court has devoted substantial resources … to this case

in holding hearings, conducting conferences and deciding numerous motions"); *In re Weinstein*, 234 B.R. 862, 866 (Bankr. E.D.N.Y. 1999) (granting stay relief to permit creditors to continue prosecuting NASD arbitration; "[t]he NASD action may make findings which will act as *res judicata* as to relevant issues in the nondischargeability action … or they may find that for the Debtor, in which case there would be no debt owed … Vacatur of the stay is [therefore] appropriate to permit the NASD action to make its findings"); *Burger Boys*, 183 B.R. at 688-89 (affirming decision abstaining from adversary proceeding the debtor commenced against its landlord, on the ground that an eviction action had been commenced prepetition in New York City Civil Court, and granting stay relief to permit adjudication of debtor's claims in the context of said state court action, and noting that "[t]he decision to grant relief from the automatic stay is logical within the context of the Bankruptcy Court's determination that it must abstain from Burger Boys' Adversary Proceeding. Unable to provide relief itself, the Bankruptcy Court lifted the stay in order to allow timely adjudication of the issues in appropriate forums that could provide complete relief").

37. Stay relief should therefore be granted, so that Claim #5 can be liquidated in state court, as contemplated by 28 U.S.C. § 1334(c), and so that the action may proceed as against all defendants.

## **CONCLUSION**

This Court should abstain from hearing the Objection and stay relief should be granted so that the state court action can proceed, and this Court should grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: New York, NY<br>November 19, 2024 | Amini LLC<br><br>/s/ Jeffrey Chubak<br>Avery Samet<br>Jeffrey Chubak<br>131 West 35th Street<br>12th Floor<br>New York, NY 10001<br>asamet@aminillc.com<br>jchubak@aminillc.com<br>(212) 490-4700<br>- and -<br>Gregory O. Tuttle<br>Alex Banzhaf<br>Alexa DePierro<br>Tuttle Yick LLP<br>352 Seventh Avenue<br>14th Floor<br>New York, NY 10001<br>(646) 833-0300<br>gtuttle@tuttleyick.com<br>abanzhaf@tuttleyick.com<br>adepierro@tuttleyick.com<br>Attorneys for Creditor Robert Taylor |